# Peters Branch of International Shoe Co. v. Jones.

(Decided Feb. 3, 1933.)

WOOTTON & WOOTON and D. G. BOLEYN for appellant.

C. A. NOBLE for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Reversing.

John W. Jones brought this action on December 30, 1930, against the Peters Branch of the International Shoe Company. The defendant demurred to the petition and the demurrer was overruled; it then filed answer denying its allegations. On the trial of the case the plaintiff recovered a judgment for $1,200. The defendant appeals.

The first question presented is: Was the demurrer to the petition properly overruled? The facts alleged are these: In the month of November, 1923, the plaintiff was a merchant doing business at Walkertown, a suburb of the city of Hazard, engaged in retailing general merchandise, and was then handling various brands of shoes. The defendant then, by its agent T. T. Lyttle, entered into a contract with the plaintiff by which the plaintiff was to close out the various brands of shoes he then carried in stock and to handle there, exclusively, the boots and shoes of the defendant, and he was to advertise the business in certain ways to build up the trade, and that in consideration of this the defendant agreed it would not sell its merchandise to any other dealer within the city limits of Hazard and would supply the plaintiff with merchandise according to his order when requested. He carried out his part of the contract and continued to run his store and make orders until the month of August, 1930, when he discovered that the defendant was selling its shoes to the Noble Stores in Hazard, and he requested the shoe company to desist from selling to his competitor and to ship him stock according to his order, in order that he might have a reasonable time to dispose of the stock he then had on hand, which he had bought pursuant to the contract, but that the defendant then refused and failed to ship to him and continued to sell its shoes to the Noble Stores. He had on hand a stock of shoes amounting to $2,000, and he had been unable to fill in his depleted stock and the same was then on his hands and was shelfworn and its salable value has been destroyed by reason of the violations of the terms of the contract by defendant, to his damage in the sum of $2,000. He had repeatedly demanded of the defendant to comply with the terms of the contract, but it refused to do so; that by reason of his stock of shoes being depleted in size and styles, by defendant's failure to supply him with shoes, he had been deprived of the sales on shoes for a period of five months, which would reasonably have been the sum of $1,000; that he had been at all times ready and willing to abide by the carrying out the conditions of the contract and had done certain advertising which, he set out, amounted to $666 for which also he prayed judgment.

In Victoria Limestone Co. v. Hinton 156 Ky. 674, 161 S. W. 1109, 1110, the Limestone Company made a

contract with Hinton on June 12, by which he agreed to haul barges of stone for it at a certain price, and it agreed to furnish him three barges a week. He began work under the contract, but the company only furnished him on an average of one and one-half barges a week. November 4, he notified the company that he would quit and brought an action to recover damages for the breach of the contract, sustaining a recovery by the plaintiff in the action. The court said:

> "Upon the question of the indefiniteness of the term of the contract, the rule is well settled that, when the time of service under a contract is left discretionary with either party, or when it is not definite as to time, either party has the right to terminate it at any time, and no cause therefor need be alleged or proved. L. & N. R. R. Co. v. Offutt, 99 Ky. 427,435, 36 S. W. 181, 18 Ky. Law Rep. 303, 59 Am. St. Rep. 467.

> "And as to the question of a want of mutuality of obligation, it is equally apparent that a want of mutuality is no defense in the case of an executed contract. Des Moines Valley R. Co. v. Graff, 27 Iowa 99, 1 Am .Rep. 256.

> "In the case at bar, therefore, either party had the right to terminate the contract at any time without any further liability; but, so long as the parties worked under the contract, both are liable thereunder.

> "In this case the contract was in full operation from June 28 to November 4, 1912, and during that time appellant stood obligated to furnish appellee 3 barges of stone per week, and appellee was likewise obligated to tow the same at 2 cents per cubic foot. To that extent the contract was in operation, and, appellant having failed to perform its part thereof, it is liable."

In Johnson v. International Shoe Co. 228 Ky. 450, 15 S. W. (2d) 270, 271, the shoe company brought a suit on March 11, 1926, against Johnson to recover a balance due for shoes sold. He filed a counterclaim alleging that in 1920 at the solicitation of plaintiff's agents he purchased a bill of shoes from plaintiff with the agreement that plaintiff would not sell its products to any other merchant in Jackson so long as he carried

its line of shoes; that he had since worked under the contract and established a large trade and in the fall of 1925 purchased from the plaintiff several thousand dollars worth of shoes, included in the accounts sued on, and was fully stocked with plaintiff's goods when plaintiff in violation of the contract sold its products to other merchants in Jackson to such an extent that he could not dispose of the goods he had purchased, to his damage in the sum of $2,500. The circuit court sustained a demurrer to the counterclaim. Reversing the judgment this court said:

> "True, appellant was not bound to purchase, and he could not have required appellee to furnish him, any goods under the contract. But he is not seeking this relief, nor is he seeking damage for appellee's failure in this particular. On the contrary, he is saying it furnished him goods *under the contract,* and destroyed their salable value by furnishing the same goods to his competitors before he had a reasonable time within which to dispose of his purchase, and that this was in *violation of the terms* of the contract. These facts, if true, bring this case within the reasoning of Victoria Limestone Co. v. Hinton, and distinguish it from the long line of decisions cited. by appellee, in which the aggrieved party was complaining of his adversaries' failure to furnish him goods under an indefinite or unilateral contract."

In Livingston & Co. v. Congoleum Nairn, 244 Ky. 533, 51 S. W. (2d) 678, 679, the Congoleum-Nairn Company sued the Livingston Company to recover a balance of $1,845.02, on account of goods sold and delivered. By its answer the defendant pleaded that under its contract with the plaintiff it was given a certain territory around Paducah and it was agreed that it should have the exclusive sale of the goods in this territory, and that in violation of the agreement the plaintiff had sold goods to others in the territory, to its damage in the sum of $2,130. The court said:

> "The plaintiff had shipped to the defendant something over $20,000 worth of goods. The contract was a binding one until terminated by one of the parties, and, if the plaintiffs violated the contract before it was so terminated, the defendants may recover such damages as they sustain by the breach

of the contract; for the defendants had bought the $20,000 worth of goods on the faith of the contract, and they had the right to demand that the contract be respected until it was terminated by one of the parties. The defendant may therefore recover on its counterclaim such damages as it sustained up to the time one of the parties exercised its right to terminate it."

In above opinions other cases are cited sustaining the conclusion. The rule as to such a contract is that either party may at any time terminate it, but that until it is so terminated, it is in force and may not be violated by either party with impunity. In the last two cases above cited the gist of the counterclaim was that in violation of the contract the plaintiff had sold its goods to others and thus had denied the defendant exclusive privilege of selling the goods in that locality. That is not the gist of the petition here. The gist of the petition here is that after August 8, 1930, the defendant failed to fill plaintiff's orders. This it had a right to do, for it had a right to terminate the contract at any time, and no damages can be recovered for the refusal to fill the orders. While the petition states inferentially that the defendant had sold its goods to the Noble Stores, it is not expressly alleged when this was or that it was during the life of the contract or what damages the plaintiff sustained by reason of this, if any. In order to constitute a cause of action in a case like this, the pleadings must not only state the contract and its breach, but must allege the damage sustained by reason of the breach. The allegations of the petition here are not sufficient. To sustain an action on the ground that the defendant sold its goods to others during the life of the contract and before it was disaffirmed by the defendant, these facts must be alleged. That is the only cause of action shown by the proof and it was not sufficiently set out in the petition. The demurrer to the petition, therefore, should have been sustained.

The next question arising is: Should the defendant's motion for a peremptory instruction on all the evidence have been sustained?

On the day before the trial the plaintiff filed an amended petition in which, after setting out that the contract was made with Lyttle, as above stated, these words were added:

"And that said defendant company ratified the same by living up to said contract and carrying out the terms thereof for the length of time stated in the original petition, and further by their written approval and ratification in the form of a letter in which they approved said contract and which was received by United States Mail by this defendant, but later was destroyed in the flood of 1927."

By an order made the next day this was taken as controverted and the parties proceeded with the trial. The uncontradicted proof showed that Lyttle was only a drummer and had no authority to give Jones a contract for an exclusive agency. The plaintiff's right to go to the jury turned on whether the company had ratified the agent's contract, and without some proof of this the peremptory instruction should· have been given. The plaintiff, over the objection of the defendant, was permitted to testify that he had received a letter fro mthe defendant relative to the contract he entered into with Lyttle; that he had it in the store with some other papers and it got washed away in the flood of 1927 and was lost. He was then allowed to state, in substance, that he wrote the company when they began selling Arch-Seele some shoes and told them about the contract which he and Mr. Lyttle had, and that in a few days he got a letter from the company saying that they would live up to the contract which Mr. Lyttle and he had made. The letter which he got from the company was in answer to his letter to the company, and its meaning would depend upon what was in his letter to the company. There was no proof that his letter to the company was lost. There had been no notice to the company to produce the letter, and parol proof of its contents was inadmissible without some proof that the letter was lost or that it was in the possession of the defendant and it had reasonable notice to produce it. All the evidence as to the contents of the letter he wrote, or the answer to it which he received, should have been excluded in the absence of proper proof as to the letter he had written, which was answered in the company's letter. 22 C. J. p. 1045, sec. 1342; p. 1059, sec. 1358. If this evidence had been excluded, there was nothing to submit to the jury; for an unauthorized contract can only be ratified by the principal upon a fair notice of all the facts, and there was nothing here to show that the

principal had any notice of what Lyttle had done or any contract he had made, except the letter which Jones testified he wrote them. All other questions are reserved.

Judgment reversed, and case remanded for further proceedings consistent herewith, and on the return of the case the plaintiff will be allowed to amend his petition.