## Peck v. Peck.

(Decided Oct. 23, 1934.)

836

L. B. ALEXANDER for appellant.

W. MIKE OLIVER for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This appeal concerns unfortunate litigation between father and son. For a statement of the facts preceding its commencement, we adopt that in the son's brief. It reads: "On the 13th day of October, 1923, as shown by deed recorded in Deed Book 137, p. 572, in the McCracken county court clerk's office, Jack Henson conveyed to Charley Peck and Rollie Peck 19 acres of land, with buildings thereon, which property is the subject of this litigation. At the time, or shortly after this deed of conveyance was executed, the appellant, Charley Peck, and Rollie Peck, the other grantee in said deed, gave to the appellee, Joe L. Peck, a writing wherein and whereby Charley Peck and Rollie Peck agreed that Joe L. Peck and his wife, they being the father and mother of Charley and Rollie Peck, might live upon the property involved in this litigation for and during their natural life. Joe L. Peck and his wife moved upon this property, and, after living there about two years, separated, and Mrs. Peck left the premises. A divorce was granted to Mrs. Peck, and she now lives somewhere in the West, and Joe L. Peck has remained on this property since 1925, occupying one of the rooms, and tending some 2 or 3 acres in garden. Charley Peck, for a short while after this separation, lived in the home, and he left and went to New Mexico, when Rollie Peck moved into this property and lived there. Some time later, at the instance of Rollie Peck, Charley Peck returned to Kentucky, and lived in this property with the appellee, Joe L. Peck, occupying one room and eating at the table of Charley Peck. During the latter part of 1931, or the early part of 1932, Joe L. Peck instituted a forcible detainer proceeding against the appellant, Charley Peck, seeking to oust him of possession of the property in-

volved in this litigation. This case was tried on the 24th day of May, 1932,'' resulting in a verdict favorable to the son. It was agreed of record at the time of the trial now under review that Joe L. Peck was the owner of a life estate in the 19 acres.

Within a few days after the trial, in 1932, Joe Peck, the father, claims that his son Charley told him, if he would let him stay on the land the rest of the year, he would move out the 1st of January, 1933. He claims he ''made this statement more than once.'' The father also claims that he made arrangements with his older son, Rollie Peck, to move in with him on the first of the year 1933. Rollie Peck, the older son, claims he went to see, and did see, Charley about ''moving in,'' and he informed Charley he wanted to ''move down there,'' whereupon Charley stated to him: ''If you will stay out and let me alone until the first day of January, I will move out and you can have full possession of the place.'' Rollie also informed him that his father had consented for him to move in.

W. A. Peck, a brother of Joe, narrates a conversation with Charley, in which the latter stated he would surrender possession January 1, 1933. As it appears in the record, his statement is rather indefinite and confusing, but a close scrutiny and careful examination of it convinces us it discloses that they were discussing Charley's removal from the premises in accordance with the promise which his father relates respecting his moving January 1, 1933. The statements of Rollie Peck clearly show he informed Charley he was expecting to move on the premises in accordance with an arrangement made by the latter with his father, and that the statement of Charley that he would surrender full possession of the place the 1st of January had reference to, and a connection with, his surrender of the possession in accordance with his promise as claimed by his father. The testimony of Rollie and W. A. Peck was competent.

Charley Peck pleaded the verdict of the jury and the judgment thereon, acquitting him on the 24th day of May, 1932, of the charge of forcible detainer, as a bar to this proceeding. The verdict of the jury and the judgment entered thereon in May, 1932, were rendered on a warrant charging him with forcible detainer on the date stated in it. The warrant on which the verdict was returned and judgment entered in the present case

charged him with forcibly detaining the premises therein described on the 18th day of February, 1933. His acquittal of the charge made in the warrant issued in 1932 was certainly no bar to a warrant for a forcible detainer committed in February, 1933. Shepherd v. Thompson, 2 Bush, 176.

Charley asserts that a charge of forcible detainer can be sustained only where the relation of landlord and tenant exists, and the facts herein fail to establish this relation existed between him and his father at the time of the issuance of the writ of forcible detainer. To sustain this, he relies on his statement that the land consisted of 19 acres, and he was to have actual possession of it, except the garden consisting of about three and a half or four acres, and that his father agreed to retain possession of it and the use of one room in the residence; he to furnish his father with board during the continuation of this arrangement. His insistence that the relation of landlord and tenant on the facts did not exist is iridescent. The period of time the arrangement was to continue was not fixed by the parties, consequently it was terminable at the will of either on reasonable notice to the other. Peters Branch of Int. Shoe Co. v. Jones, 247 Ky. 193, 56 S. W. (2d) 994; Torson Construction Co. v. Grant, 251 Ky. 800, 66 S. W. (2d) 79. The father claims that immediately after the trial in May he demanded and his son agreed to surrender possession the following January. This was sufficient to meet the requirement of the above rule. It is not doubtful the evidence, though conflicting, was adequately sufficient to authorize the submission of the case to the jury as well as to sustain its verdict.

In the closing argument of counsel of Joe Peck, he stated: ''Should the old man be permitted to use the property which he bought or furnished the money to buy, or should he be required to live in Hell all the rest of his life?'' ''The old man has an exclusive right to the use of his property during the rest of his life.'' ''Rollie Peck has the same right there as Charley has.'' ''Charley Peck owes his father $2,400.00 which he will not pay.'' ''Alexander [counsel for Charley Peck] wants sympathy for a man who has so mistreated his father that he will not eat at his table.'' ''Alexander wants sympathy for a man who can change his statements in the twinkling of an eye.'' These statements were objected to as made, and the court overruled

the objection, except as to those referring to the $2,400 and the "twinkling of an eye." The last statement was not objected to, nor was there any ruling of the court in reference to it. On the objection to the statement referring to the $2,400, the court admonished the jury it was not proper. The other quoted statements of counsel to which an objection was made and overruled were authorized by the testimony. It developed that the father had refused to eat at the table of his son after the trial of the writ of forcible detainer in 1932. While the statement respecting his living "in Hell all the rest of his life" may be regarded as extravagant, it was used figuratively, and based upon the fact the relation of father and son existed, as it is shown by the evidence. The statement that the father had exclusive right to use the property during his life and that Rollie had the same right as Charlie, was permissible, considering Charley's admssion the father had the right to possession and use of the premises during his life, and that Rollie and he were the owners thereof subject to this life use of the property.

Perceiving no error prejudicial to the substantial rights of Charley Peck, the judgment is affirmed.