## Monroe et al. v. Rucker et al.

May 6, 1949.

230

Carl F. Eversole for appellants.

Geo. C. Robbins, G. Murray Smith, Jr., and Shumate & Shumate for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On April 15, 1892, D. P. Armer in consideration of $20 then paid, executed a deed to Lucien Keene, Arch Browning and William Daniels for one acre of land. A proper interpretation of that deed is the only issue for determination in this case.

For a more complete understanding of that issue we hereby insert that deed, omitting signature and certificate:

"This Deed between D. P. Armer of Richmond, Madison County of the first part, and Lucien Keene, Arch Browning and William Daniels, Trustees of the colored district school No. 9, Waco, Ky. of the second part, witnesseth, that the said party of the first part in consideration of twenty dollars cash in hand, the receipt of which is hereby acknowledged, do hereby sell, grant and convey to the party of the second part, his heirs and assigns, the following described property, viz: One acre of land in Madison Co. Ky. near Waco, a part (of) the land bought of Searcy and Hisle, commencing at the

corner of Henry Royston land on the Waco and Red River Pike, running parallel with his land west 279 feet, thence east 156½ feet; thence north 259 feet with pike, south 156½ feet to the beginning.

"To have and to hold the same with all the appurtenances thereon, to the second party, their heirs and assigns forever with covenant of 'General Warranty.' "

The conveyed acre has been occupied and used as a school site for colored children in that district from that time until comparatively recently when it was abandoned as such and the Madison County School Board executed a deed therefor to the two appellees jointly.

On January 30, 1948, all of the descendants of Browning, Daniels and Keene—59 in number—filed this ejectment action in the Madison circuit court against the two defendants to recover from them the involved acre on the ground that the deed of Armer to their ancestors vested in them jointly and individually a fee simple title and not just a holding title as trustees and fiduciaries for the colored school district. The sole argument made in substantiation of that contention is, that in the granting clause of the deed the phrase is "his heirs and assigns" and in the habendum clause is employed the phrase "their heirs and assigns forever with covenant of general warranty." The phraseology of the deed shows on its face that it was crudely drafted by an unskilled person unfamiliar with the correct drafting of such instruments so as to completely express the intention and purpose of the parties. For instance, the singular is written where the plural should have been, as is illustrated by the use of the word "his" in referring to the grantees, and the same is true by the use of the singular in the word "party" instead of the plural "parties," as grantees.

The defendants, and appellees, filed a demurrer to the petition with which a copy of the deed was filed as an exhibit, but before the court acted on that demurrer they filed their answer, the first paragraph of which was a general denial of the averments of the petition, admitting, however, that the three ancestors of plaintiffs were trustees of the named school district at the time of the execution of the deed and that they have long since died.

They further pleaded in that paragraph that they were now in possession of the acre of land in contest "having bought same from the Madison county school board" which body at that time was the legal title holder of public school sites and buildings.

They then alleged in a second paragraph that it was the intention of the parties to the deed executed by Armer to convey only the legal title to plaintiff's three ancestors, in trust and for the benefit of the school disrict and not to them individually and absolutely. In a third paragraph, which was made a counterclaim, they alleged that plaintiffs were "wrongfully and unlawfully making claims to the property" as owners thereof which they inherited from their respective ancestors. Plaintiffs then moved to strike from the answer of defendants paragraphs (2) and (3) of their answer which the court overruled. It then sustained defendants' demurrer to the petition. Plaintiffs declined to plead further and their petition was dismissed, from which they prosecute this appeal.

In 16 A. J. 528, section 162, it is said:

"It is a general rule well settled by concurrence of the authorities which have had occasion to mention the subject that the rules of construction applicable to deeds are the rules of construction and recognized canons applicable to the construction of contracts. Such rules of construction in deed cases are either identical or closely analogous to the rules controlling in contract cases. The rules of construction applicable to contracts are well settled and lay emphasis upon the intention of the parties, fairness, justice, and common understanding. The rules applicable to deeds and contracts are substantially similar to the rules of construction applicable to such other written instruments as leases, mortgages, and to a certain extent, instruments of trust."

Section 168, page 531 of the same volume is:

"In the consideration of the application of rules of construction to deeds, it has been pointed out that all rules of construction are simply means to a given end, being those methods of reasoning which experience has taught are best calculated to lead to the intention, and generally no rule will be adopted that leads to the de-

feat of the intention. That is to say, the primary rule to be observed is that the real intention of the parties, particularly that of the grantor, is to be sought and carried out whenever possible, when contrary to no settled rule of property which specifically ingrafts a particular meaning upon certain language or when not contrary to, or violative of, settled principles of law or statutory prohibitions. The rule giving paramount emphasis to intention is established by the effect of statutes in some jurisdictions.

"The tendency of modern decisions is to disregard technicalities and to treat all uncertainties in a conveyance as ambiguities subject to be cleared up by resort to the intention of the parties as gathered from the instrument itself, the circumstances attending and leading up to its execution, and the subject matter and the situation of the parties as of that time. Hence, in the construction of deeds surrounding circumstances are accorded due weight. In the consideration of these various factors, the court will place itself as nearly as possible in the position of the parties when the instrument was executed.

"Where the intention of the grantor clearly appears from the face of a deed, effect will be given thereto, however unusual the form of the deed, unless the repugnancy in its clauses is such as to render the deed utterly void."

In section 170, page 533 of the same volume it is broadly stated that the intention of the parties is to be determined by taking into consideration "all the clauses of a deed or other written instruments" and that "in applying this ruling, a court is not confined to a strict and literal construction of the language used where such construction will frustrate the intention of the parties." Many opinions from different courts of last resort are cited in support of the referred to texts, which it must be conceded are the correct and primary rules for the interpretation of not only deeds, but all other written instruments.

The fundamental error in expressing the intention of the parties to the deed in contest is that the word "heirs" was employed where the word "successors"

234

should have been. Under the rules supra from the cited volume of A. J. there can be no doubt that the judgment appealed from was and is correct. That conclusion is fortified by the fact that the parties to the deed so construed it for a period of more than one-third of a century by occupying and adversely claiming it as public school property following the deaths of their three ancestors.

The court did not adjudge to defendants their prayer in their counterclaim for a quieting of their title, because of sustaining her demurrer to the petition, thus relieving us of passing upon that issue. However, if it should be admitted arguendo that defendants' title is imperfect for any reason it would not militate against the judgment of the trial court, although a right of reverter may have existed in favor of the grantor or his heirs following the abandonment of the property as a public school site, since it is a fundamental rule, without exception, that the plaintiff in ejectment proceedings, or others seeking to recover title to land, must recover on the strength of his title, and not on the weakness of his adversary's title. Placing ourselves in the position of the parties at the time the deed was executed in 1892, we entertain not the shadow of a doubt as to their intention to convey only the naked legal title of the contested land to the named trustees who were to hold it for the benefit of the school district.

Wherefore, the judgment is affirmed.