# Duff et al. v. P. T. Allen Lumber Co.

May 27, 1949.

G. G. Rawlings for appellant.

Lewis Hopper for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In October, 1946, the P. T. Allen Lumber Company, a corporation, owned the timber on 952 acres of land in Leslie County, but whether they were also owners of the fee to that tract is not shown by the record. The whole acreage appears to have been covered with timber. The lumber company—defendant and appellee here—operated a sawmill at some place in Harlan County, as we gather from the record. The appellants, Duff and Renfro, were laborers and so far as this record shows possessed only a small amount of property. On the above date the company entered into a contract with appellants to cut all of the timber on the 952 acres above 12 inches in diameter and to saw the body of the trees into saw logs and skid (drag) them to a dump pile on the acreage where they would be later carried by truck to the mill of appellee to be manufactured into lumber.

Appellants were to receive for their labor the sum of $20 per thousand feet "Boyle and Scribner measurement" and to be paid bi-monthly the amount then due them. Appellants agreed "to furnish all the necessary equipment, teams and men for the cutting and skidding of said timber without any obligation to the owner,

whatsoever,'' and to use their own method and means in the cutting and skidding free from the direction and control of the lumber company. They also agreed ''to cut and skid trees every workable day and to have said trees at the log dump or skidway so the truck may load same for conveyance to the P. T. Allen Lumber Company at Baxter, Kentucky,'' some miles distant.

The appellants began work under the contract as soon as it was executed, but they employed no help except one man who assisted in operating the saw in cutting and converting the timber into saw logs. They possessed at that time only two horses with which to skid the logs to the place where they were dumped, but, though not provided in the contract, the defendant furnished two horses of its own for that purpose. Plaintiffs operated under the contract for nine months during which period they cut the timber on about 30 acres of the tract which was 3 1/3 acres per month, and there was an average of about 3,000 feet per acre of available timber under the contract. They then ceased cutting and were paid for all of their services under the contract up to that time.

On January 6, 1948, plaintiff filed this action in the Harlan circuit court against appellee, company, to recover damages in the amount of $25,000 on the ground that it wrongfully cancelled and broke the contract by forbidding plaintiffs from carrying it out. They alleged in their petition that they were making a profit of $5 per 1,000 feet and if defendant had not wrongfully cancelled the contract they would have realized a profit of the amount sued for.

The answer of defendant denied that it had wrongfully or otherwise cancelled the contract, but that plaintiffs had done so, and it sought by counterclaim to recover judgment against plaintiffs for their failure to perform their contract, since it could not at the time of their breaching the contract obtain the same services for less than $30 per 1,000 feet. Following pleadings made the issues and at the trial the court at the close of plaintiffs' testimony sustained defendant's motion for a directed verdict in its favor. Upon the verdict thus directed judgment was rendered dismissing the petition, to reverse which plaintiffs prosecute this ap-

peal on the sole ground that the court erred in so directing.

The court concluded that (1) the contract specified no time for its performance, but was indefinite in that respect, and being so either party had the right to abandon or cancel it at any time, since it then became one at sufferance or at the will of either party, and (2) that the testimony failed to show that the appellee renounced the contract. On this appeal appellants' counsel attacked the correctness of the court's conclusion, while appellee's counsel contends they are supported by the record. We need not discuss nor determine the latter contention since we have concluded that No. 1 is sustained by the record and completely supports the court's ruling in giving the directed instruction to find for defendant.

We have read all of the cases and authorities (few in number) cited by appellant's counsel and find none of them in conflict with the general rule above stated as to indefinite time of performance of contracts. Our latest case holding that where no time is fixed for the performance of a contract, and where the time for performance is indefinite it may be renounced by either party at any time, with or without cause, is Morgan v. Morgan, 309 Ky. 581, 218 S. W. 2d 410. In support thereof we cited the case of Rutherford v. Azarch, 266 Ky. 559, 99 S. W. 2d 719, 720.

The contract involved in the latter case was one of tenancy between the landlord and tenant and we held that "the renting being for an indefinite period, appellant at most was a mere tenant at will." In the Morgan opinion we said (309 Ky. 581, 218 S. W. 2d 411): "One of the chief characteristics of a tenancy at will is uncertainty respecting the term, and such a tenancy may arise by implication as well as out of an express contract. The broad rule seems to be that a lease which is at the will of one of the parties is equally at the will of the other, and that one of them is no more or further bound than the other. 32 Am. Jur., Landlord and Tenant, Section 66."

In the very recent case of Horseman v. Horseman, 309 Ky. 289, 217 S. W. 2d 645, the construction of a will was involved, and we again followed the general rule an-

nounced in the two opinions supra for the interpretation of written instruments which is that a consideration of the entire document, whatever may be its subject matter to administer the intention of the party or parties and the purpose to be accomplished by the execution of the writing should be the interpretation given it by the court. Other support for the rule that a contract indefinite as to the time of performance will be construed as one that may be terminated at the will of either party are: Louisville & N. R. Co. v. Offutt, 99 Ky. 427, 36 S. W. 181, 59 Am. St. Rep. 467; Peters Branch of International Shoe Co. v. Jones, 247 Ky. 193, 56 S. W. 2d 994 and Victoria Limestone Co. v. Hinton, 156 Ky. 674, 161 S. W. 1109. Approving text authority is 12 A. J. 860, sec. 305, wherein it is stated: "Some contracts which mention no period of duration are construed as terminable at will. This is true of a contract for services which does not specify as to the duration. A more guarded statement of such a rule is that in contracts for personal service and special confidence there is an implication that the parties intend that it shall not be prolonged if either of the parties shall become dissatisfied."

It therefore may be accepted as a well settled rule that a contract which contains no time for performance —especially if it is one contracting for service to be performed—is an indefinite contract as to performance and may be terminated by either party at will, and whether or not it was so intended by the parties is to be gathered from all parts of the contract and the circumstances under which it was executed, as well as the purpose to be accomplished.

It is insisted, however, that the contract says that plaintiffs agree to cut *all* timber on the 952 acres upon which the timber was growing. We have seen that during the nine months that plaintiffs worked under the contract they cut only 3 1/3 acres per month. At that rate it would require 23 years and 24 days to go over the entire tract and cut therefrom the trees of the size that they were permitted to cut under the contract. By that time trees left uncut because below 12 inches in diameter would have grown to the size that plaintiffs were permitted to cut.

The tract had been cut over once before the instant

contract was entered into and at the expiration of 23 years and 24 days consumed in the first going over by plaintiffs other trees would have grown large enough to be included in the contract and plaintiff would then have the right, under their interpretation of the contract, to cut such increased growth of trees and so on *ad infinitum.* It is inconceivable that the parties comprehended or purposed to enter into any such agreement. On the contrary it is our definite conclusion that it was contemplated that the two plaintiffs were employed by defendant to cut the specified trees from the 952 acre tract and perform the services provided for in the contract and to be paid at the time and in the specified amounts for all trees they cut, but that either party might terminate the contract at any time they wished.

In the recent case of Monroe v. Rucker, 310 Ky. 229, 220 S. W. 2d 391, the only question involved was the proper interpretation of a deed, the correct rule for which is stated in 16 A. J. 528, section 162 et seq. to be the same as apply in the construction of any other written contract or written instrument. On Page 531, section 168 of the same volume it is said, inter alia, that:

"The tendency of modern decisions is—to disregard technicalities and to treat all uncertainties in a conveyance as ambiguities subject to be cleared up by resort to the intention of the parties as gathered from the instrument itself, the circumstances attending and leading up to its execution, and the subject matter and the situation of the parties as of that time. Hence, in the construction of deed (or contracts) surrounding circumstances are accorded due weight. In the consideration of these various factors, the court will place itself as nearly as possible in the position of the parties when the instrument was executed.

"Where the intention of the grantor clearly appears from the face of a deed, effect will be given thereto, however unusual the form of the deed, unless the repugnancy in its clauses is such as to render the deed utterly void." (Our parenthesis).

The same excerpt is contained in the Monroe opinion together with others.

Plaintiffs seem to have so construed their contract

by what they said at the time they claim defendants terminated the contract, which was after they had worked under it for 9 months. Duff's testimony in that respect was: "I said, 'Mr. Allen, are you going to let us cut any more; we are in bad shape; horses are eating us up.' He said, 'No, I don't guess.' I said, 'Mr. Allen, we have to work; we have that stock over there and we are in debt; we are bad in debt.' He said he wasn't going to work any more. I asked could he give us any work anywhere, and he said 'No.' I tried him twice."

If the involved contract gave plaintiffs the right to cut *all* of the available timber, as specified, growing on the entire acreage it would have been the natural thing, for them to have insisted on their rights under the contract instead of urging their poverty and begging permission to continue their services because they needed the proceeds derived therefrom, but if that request should not be granted that they then be given other employment by defendants.

As we have seen, the court so determined and we think correctly so. Having reached that conclusion it is unnecessary, as we have hereinbefore stated, to discuss or determine conclusion (2).

Wherefore, for the reasons stated, the judgment is affirmed.