**James C. LEIBEL, Appellant,**

v.

**RAYNOR MANUFACTURING COMPANY, Appellee.**

Court of Appeals of Kentucky.

June 23, 1978.

Discretionary Review Denied
Oct. 24, 1978.

Todd S. Horstmeyer, Lexington, for appellant.

Charles G. Wylie, Lexington, for appellee.

Before HOWERTON, LESTER and WINTERSHEIMER, JJ.

HOWERTON, Judge.

This is an appeal from a summary judgment dismissing Count I of appellant's three-count complaint. The dismissal of Count I was deemed to be a final, appealable judgment. With this we agree and accept jurisdiction.

The essential facts are that the parties entered into an oral agreement whereby appellant was to have an exclusive dealer-distributorship for appellee's garage doors in a territory extending for a 50-mile radius from Lexington, Kentucky. The agreement was entered into on or about March 1, 1974. The appellee agreed to sell and deliver to the appellant its garage doors, operators and parts at the factory distributor price, and the appellant agreed to sell, install and service Raynor products exclusively, thereby establishing a relationship of dealer-distributor and manufacturer-supplier. There is no real dispute concerning the nature of the relationship.

As a result of the agreement, the appellant borrowed substantial sums of money in order to make certain capital expenditures, purchase an inventory, and to provide working capital for starting the business, including the rental of storage and office space, employment of personnel, and the purchase of a service truck, tools and equipment.

After two years of what appears to have been decreasing sales of Raynor products in the Lexington area, appellee notified the appellant on or about June 30, 1976, that as of that date the relationship was terminated. Appellant was also notified that Helton Overhead Door Sales had been established by the appellee as the new dealer-distributor for the area, and that the appellant would be required to order all future doors,

operators and parts from the new dealer-distributor.

Appellee's motion for a summary judgment was based on the ground that the agreement was for an indefinite duration, and that it could be terminated at will by either party. The appellant resisted the motion on the theory that he was entitled to reasonable notice of appellee's intention to terminate the agreement.

On April 20, 1977, the circuit court granted the summary judgment and entered its memorandum opinion, setting forth its four reasons for the judgment. Appellant had relied in part upon the provisions regarding sales in the Uniform Commercial Code, and specifically subsections (2) and (3) of KRS 355.2–309. The trial court concluded that the Code, as it applies to the sale of goods, was not intended to apply to the situation in this case. Secondly, the court concluded that even if the Uniform Commercial Code did apply, KRS 355.2–309(2), (3) means merely that actual notice of the termination must be given. Written notice had been given. The court concluded that the additional requirement of "reasonable notification" was not necessary. The opinion next concluded that although there are no Kentucky cases directly on point, *Peters Branch of International Shoe Company v. Jones*, 247 Ky. 193, 56 S.W.2d 994 (1933), holds that in an exclusive franchise agreement where there was no agreement as to the duration of the contract, either party could terminate the agreement at will, and there was no mention of notice. Finally, the court concluded that if it required reasonable notification for termination of the agreement, it would be making a contract for the parties by stating a time for the duration of the contract.

■ We disagree with the conclusions of the trial court and hold that reasonable notification is required in order to terminate an on-going oral agreement for the sale of goods in a relationship of manufacturer-supplier and dealer-distributor or franchisee. The summary judgment must therefore be set aside and a determination must be made on the factual issue of whether or not the notification of termination given in this case was reasonable under the circumstances.

Appellant argues that this contract is now controlled by Article II of the Uniform Commercial Code. The opinion of the trial court provided only that, "It is the opinion of the court that the Uniform Commercial Code applies to the sale of goods and is not intended to apply to the type of situation we have in this case." The rule for application of Article II in Kentucky was stated in *Buttorff v. United Electronic Laboratories, Inc.*, Ky., 459 S.W.2d 581 (1970). According to the opinion in *Buttorff, supra*, we are to look to the real nature of the agreement, the real purpose, and what the parties really intended. It appears that the case *sub judice* can be distinguished from *Buttorff, supra*, on its facts. The relationship in *Buttorff, supra*, was found to be a contract for personal services, not for the sale of goods or merchandise. Buttorff was actually a commissioned salesman for United Electronics Laboratories' cameras and related equipment.

We must now consider the provisions of the Uniform Commercial Code in order to determine whether or not the article on sales is applicable to the situation at bar. This question has not yet been decided by a Kentucky court.

Article II of the Uniform Commercial Code applies to transactions involving goods and merchandise. "A contract between an automobile manufacturer and an automobile dealer is a contract of sale since it is apparent that its over all purpose and object is to effect the sale of the automobiles manufactured by the manufacturer, and the fact that it may speak in terms of franchises does not change its true character." 1 Anderson, U.C.C. § 2–101:5, p. 201 (2nd ed.) "When a manufacturer sells its product to the public through a local dealer, the transaction is a sale, and the application of the Code is not avoided by describing the relationship as a 'sales distribution' plan." *Id.*, at 202. In relation to the same section of the Code, Anderson also cites a Pennsylvania case which held that, "A dealership

contract for the sale of automobile parts is a contract for the sale of goods, even though the contract declares that it is a personal service contract." Cum.Supp., Anderson, U.C.C., p. 174 (2nd ed.) Anderson also cites a California case holding that, "Where a supplier of milk agreed with a distributor that the latter would resell milk purchased from the supplier to wholesalers, the relationship between the supplier and the distributor was a sale of goods, and not a contract for services." *Id.*

In the case at bar, we have a clear situation where the dealer-distributor was to sell the "goods" of the manufacturer-supplier. Appellant was not a commissioned salesman, and the agreement appears to be for the sale of goods.

■ We conclude that the time has come to recognize that a distributorship agreement must be recognized as an agreement for the sale of goods and subject to the provisions of Article II of the Uniform Commercial Code, which has been adopted by Kentucky in Chapter 355 of the *Kentucky Revised Statutes.* The amount of money being invested pursuant to distributorship agreements is ever increasing. Often there are no formal written agreements, and it may be that the manufacturer's policy is to have no written agreements. By not establishing a length of time for the contract to exist, either party may terminate the relationship at will, but without a requirement for good faith and fair play, either party may be severely damaged. When sales are the primary essence of the distributorship agreement, the dealer is compelled to keep a large inventory on hand. If the distributorship is terminated without allowing the dealer sufficient time to sell his remaining inventory, substantial damages may result, even if the manufacturer agrees to repurchase the inventory. Reasonable notification should be the minimum amount of protection afforded to either party upon the termination of an on-going sales agreement. When such reasonable notice is not given, a cause of action for damages may exist.

■ Having concluded that the Code is applicable to the relationship between the appellant and appellee, we must look at the specific requirements of KRS 355.2-309, "Absence of Specific Time Provisions—Notice of Termination." Subsection (2) reads, "Where the contract provides for successive performances, but is indefinite in duration, it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party." Subsection (3) goes on to provide, "Termination of a contract by one (1) party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable." There can be no doubt that reasonable notice is now required, whether or not prior Kentucky decisions, such as *Peters Branch of International Shoe Company v. Jones, supra,* which was relied upon by the trial court, held that notification was not required in an agreement which could be terminated at will. There is a real question of whether *Jones, supra,* actually reached a decision on the reasonable notice question, but we need not determine that point here. Today, in Kentucky, if the provisions of Article II of the Uniform Commercial Code apply to the relationship, reasonable notice of the intention to terminate the agreement must be given. In some cases, it would be required even if a written agreement provided for dispensing with notification. We therefore find additional error in the trial court's opinion when it concluded that even if the provisions of the Code were applicable, only actual notice of termination would be required.

Comment 8 to § 2–309 in 1 Anderson, *supra,* at p. 445 reads:

Subsection (3) recognizes that the application of principles of good faith and sound commercial practice normally call for such notification of the termination of a going contract relationship as will give the other party reasonable time to seek a substitute arrangement. An agreement dispensing with notification, or limiting the time for the seeking of a substitute

arrangement, is of course valid under this subsection unless the results of putting it into operation would be the creation of an unconscionable state of affairs.

It is also quite clear that the requirement of a reasonable notification does not relate to the method of giving notice, but to the circumstances under which the notice is given and the extent of advanced warning of termination that the notification gives.

Anderson, *supra*, in the cumulative supplement volume at p. 282, cites two Minnesota cases relating to the time which might be needed for recoupment of investment. *McGinnis Piano and Organ Co. v. Yamaha International Corporation*, 480 F.2d 474 (8th Cir. 1973) is cited for the proposition that "in some states, it is implied that a dealership contract which may be terminated upon notice must be allowed to continue for a sufficient period to enable the franchisee to recoup his investment." The case of *O. M. Droney Beverage Co. v. Miller Brewing Co.*, 365 F.Supp. 1067 (D.Minn.1973), is cited for the proposition that "under Minnesota law 'a reasonable duration will be implied in franchise agreements where a dealer has made substantial investments in reliance on the agreement.' "

The distributorship agreement existing between appellant and appellee is one in which the essence was the sale of goods. Appellant was certainly not an employee or commissioned salesman of appellee. Appellant purchased the products of the appellee at wholesale prices, and marketed them in the Lexington area. The appellant does not dispute the fact that the agreement was terminable at will, but he contends, and the law so holds, that the appellee was required to give reasonable notification of intent to terminate the contract. What length of time constitutes reasonable notice is a question of material fact which remains to be decided. We cannot say that the written notice given in this case was "reasonable" as a matter of law.

The summary judgment granted by the trial court must therefore be vacated, and the case remanded for further proceedings.

All concur.