**AMERICAN STATES INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Joseph C. KIRCHDORFER and Phyllis Kirchdorfer, Defendants– Appellants.**

**No. 02–5403.**

United States Court of Appeals, Sixth Circuit.

Nov. 18, 2003.

George P. Parker, Sr., Thomas E. Roma, Jr., Parker & O'Connell, Louisville, KY, for Plaintiff–Appellee.

Charles F. Merz, Louisville, KY, for Defendant–Appellant.

Before GIBBONS and SUTTON, Circuit Judges; and TARNOW, District Judge.*

## OPINION

TARNOW, District Judge.

Joseph and Phyllis Kirchdorfer appeal from two final orders of the district court granting summary judgment to American States Insurance Company and awarding American States $182,736.32 in attorney fees and expenses incurred in litigation with the United States. The district court determined that a General Indemnity Agreement, executed by the parties in 1964, was valid and enforceable. We AFFIRM the district court's orders.

## I.  BACKGROUND

The Kirchdorfers owned a construction company known as Skip Kirchdorfer, Inc. (SKI).  SKI was incorporated in Kentucky.  On December 23, 1964, SKI and American States Insurance Company (American States) entered into a General Indemnity Agreement (GIA), which provided that American States would act as a surety to execute payment and performance bonds on behalf of SKI. In return, the Kirchdorfers, who signed the GIA as indemnitors, agreed to indemnify American States "against any and all liability," including costs and attorney fees, arising out of the surety relationship.[1]

---

* The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

1.  The relevant text of the GIA provides:

1.  They [SKI and the Kirchdorfers, Indemnitors] ... will indemnify the Surety [American States], its successors and assigns, against any and all liability, loss, costs, damages, fees of attorneys and other expenses which the Surety may sustain or incur in consequence of having executed, or procured the execution of, any such bonds, including but not limited to (a) sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with, claims, suits or judgments under any such bonds, and (b) expenses paid or incurred in making investigations, in procuring or attempting to procure release from liability or in taking any other action in connection with any of such bonds, and in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.

Over the next twenty years, SKI obtained dozens of payment and performance bonds from American States. Pursuant to the Miller Act, 40 U.S.C. §§ 270a—270d, American States executed one of those bonds in favor of the United States to secure performance of SKI's obligation under a 1984 contract with the Air Force. SKI defaulted on the Air Force contract and, in December 1985, the Air Force terminated the agreement and requested that American States complete the contract. American States refused, and the Air Force contracted with a third party to perform the services identified in SKI's contract. The Air Force then sought recovery of its "reprocurement" costs under the bond issued by American States in 1984. SKI ceased doing business in 1986.

In July 1992, the Air Force sent a demand on the performance bond to SKI and American States, seeking $977,009.61 in excess procurement costs and liquidated damages. Both SKI and American States refused to pay and asserted that the statute of limitations had run against any potential claim by the Air Force.[2]

In July 1995, the Air Force issued a contracting officer's final decision, rejecting the statute of limitations argument and asserting a claim against SKI and American States. American States urged SKI to appeal the contracting officer's decision and deposit $100,000 in collateral, or, in the alternative, take the lead in appealing the contracting officer's decision and provide American States with adequate assurances that it would have no exposure to the government's claim. SKI refused both options.

In May 1996, American States filed a declaratory judgment action against SKI in the U.S. District Court for the Eastern District of Kentucky. In June 1996, American States filed an appeal of the decision of the Air Force contracting officer in the Court of Federal Claims (CFC). American States voluntarily dismissed the CFC appeal in August 1998. In June 1999, the Eastern District dismissed American States' declaratory judgment action for lack of ripeness, noting that American States had not yet incurred any liability in connection with the performance bond.

In November 1999, the United States sued American States in the U.S. District Court for the Northern District of Florida. American States then filed an indemnity action against the Kirchdorfers in the U.S. District Court for the Western District of Kentucky.

In September 2000, the Florida district court granted summary judgment in favor of the United States and awarded the government $977,009.61, plus prejudgment interest. American States appealed, and the Eleventh Circuit reversed the district court's order, finding that the statute of limitations had indeed run against the United States' claim. *See United States v. Am. States Ins. Co.*, 252 F.3d 1268 (11th Cir.2001).

---

4.... [I]f the Surety shall bring suit to enforce any obligation of the Indemnitors under this instrument, the Indemnitors shall be liable for the costs and expenses, including fees of attorneys, incurred in prosecuting such suit, and such costs and expenses shall be included in any judgment that may be rendered against the Indemnitors.

J.A., vol. I, at 13 & 113.

**2.** The applicable statute, 28 U.S.C § 2415(a), provides that "every action for money damages brought by the United States or an officer or agency thereof, which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues...."

Both parties then moved for summary judgment in the indemnity action pending in the Western District of Kentucky. In an order dated October 12, 2001, the district court granted summary judgment in favor of American States, finding that the GIA was valid and enforceable. In a subsequent order dated February 26, 2002, the court awarded American States $182,736.32 in attorney fees and expenses incurred in litigation with the United States.

## II. STANDARDS OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*. *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir.2003). We review an award of attorney fees for an abuse of discretion. *Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 700 (6th Cir.2003).

## III. ANALYSIS

### A. Summary Judgment

The Kirchdorfers argued on appeal, as they did below, that the GIA expired in December 1991, six years after the government's cause of action accrued. They reasoned that there was nothing in the GIA which reflected an intent that the agreement run in perpetuity. Moreover, it was not foreseeable to them that the United States would attempt to enforce a claim against the bond after its right to do so expired. In other words, once the government's right to enforce the bond expired, the GIA had no mutually recognized purpose. They further argued that, because American States agreed with them in 1995 that the United States' claim was untimely, American States must also have assumed that the Kirchdorfers' indemnity obligation had lapsed.

American States countered that the agreement did not reflect an intent by the parties that the indemnity obligations would apply only to valid claims against the bonds. Further, the fact that the Eleventh Circuit ultimately found the United States' claim to be untimely did not diminish the fact that American States was forced to incur attorney fees and costs in defending against the government's claim.

As the district court observed, the parties agreed on the following principle:

> [A] contract which "contains no time for performance—*especially if it is one contracting for service* to be performed—is an indefinite contract as to performance and may be terminated by either party at will, and whether or not it was so intended by the parties is to be gathered from all parts of the contract and the circumstances under which it was executed, as well as the purpose to be accomplished."

*United States v. Hardy*, 916 F.Supp. 1373, 1381 (W.D.Ky.1995) (quoting *Duff. v. P.T. Allen Lumber Co.*, 310 Ky. 439, 220 S.W.2d 981, 983 (1949)); J.A., vol. I, at 67. The Kirchdorfers never argued that they expressly terminated the GIA. Instead, they argued that, because American States agreed with them in 1995 that the United States' claim was untimely, American States must have assumed the Kirchdorfers' indemnity obligation had lapsed. The district court rejected the Kirchdorfers' argument as to American States' understanding in 1995. The court reasoned that the GIA clearly contemplated that the Kirchdorfers were obligated to indemnify American States, even if the costs arose from claims of questionable validity.

The Kirchdorfers also argued that the GIA should not be enforced because, in 1978, William Kantlehner, an agent for American States, told Mr. Kirchdorfer that American States would waive the Kirch-

dorfers' obligations as guarantors on subsequent indemnification agreements if they increased the capitalization of SKI. Mr. Kirchdorfer attested that he increased the corporation's capitalization and was never again called upon to guarantee new indemnification agreements, including the bond under which the United States asserted its claim against American States. However, no such agreement was ever memorialized, and the affidavit was signed more than twenty years after the alleged agreement occurred. Moreover, Kantlehner asserted that he never made the agreement and never had the authority to release the Kirchdorfers from further indemnity obligations.

After reviewing the competing affidavits, the district court concluded that Kantlehner's assertion that he lacked actual authority to release the Kirchdorfers from further indemnity obligations was convincing and that the assertions in Mr. Kirchdorfer's affidavit fell well short of establishing an oral termination or amendment of the GIA. We are in agreement that Mr. Kirchdorfer's affidavit was not sufficient to raise a genuine issue of material fact. Upon reviewing the record, the parties' arguments and briefs, and the applicable law, this Court finds no error on the part of the district court in determining that the GIA was valid and enforceable.

B. Attorney Fees and Expenses

The Kirchdorfers argued that the GIA did not automatically entitle American States to all of its claimed costs. They also argued that many of the costs, incurred over a sixteen-year period, were unnecessary and were, therefore, incurred in bad faith. The Kirchdorfers further argued that many of the costs were duplicative and their reasonableness could not be determined from the record. American States responded that it notified the Kirch-

dorfers of the claim being asserted against SKI and gave them the opportunity to assume the defense on American States' behalf. The district court found "nothing of the magnitude which suggests that the overall expenses or any particular one of them were not fair and reasonable on the whole." We find no abuse of discretion on the part of the district court in awarding attorney fees and costs to American States in accordance with the GIA.

The district court's orders are AFFIRMED.