Gordon Stephen **BUTTORFF**, Appellant,

v.

**UNITED ELECTRONIC LABORATORIES,
INC., Appellee.**

Court of Appeals of Kentucky.

May 22, 1970.

As Modified on Denial of Rehearing
Nov. 13, 1970.

Kenneth L. Anderson, Woodward, Hobson & Fulton, Louisville, for appellant.

O. Grant Bruton, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, for appellee.

REED, Judge.

In this appeal we are confronted with several problems involving the law of contracts. The plaintiff appeals from the action of the circuit court by which a verdict in his favor in the amount of $14,197.50 was set aside upon the defendant's motion for judgment n. o. v.; a judgment was entered dismissing the plaintiff's claim; $2,697.50 had been paid by the defendant on a confessed judgment. We have concluded that the decision of the trial judge was partly correct but that the plaintiff should not have been deprived of the entire judgment in his favor; a retrial is necessary; confined, however, to the question of the proper amount of compensation to which the plaintiff was entitled. We, therefore, reverse the judgment and remand the case for further proceedings as directed later in this opinion.

The plaintiff's action is for recovery of money allegedly due under an oral contract concerning the sale and marketing of a camera manufactured by the defendant and used primarily for security purposes by banks and other money-handling institutions as a protective device. The product is called "Cam-eye."

According to the plaintiff's evidence, in the latter part of January, 1961, he went to the office of the defendant, United Electronic Laboratories, Inc., for a job interview. He conferred with Mr. Rector, U. E. L.'s president at that time. It appeared that U. E. L. had successfully manufactured this product but had been unable to sell it. Plaintiff testified that he and Rector made an oral agreement sometime in the early part of February, 1961. It seems that plaintiff was initially associated with a man named Morton in the projected marketing of the camera but that a few months thereafter he and Morton concluded their relationship. Plaintiff says that his agreement with the defendant concerning the sale of cameras was reconfirmed in May of 1961.

Plaintiff's version of the agreement was that he was to develop a market for the sale of this product; he was to establish distributorships in each major population area. His pleadings recited that his compensation for his services was contained in the defendant's oral agreement to sell the product to him at a net price of $440 per camera, and that he would then resell the product to his customers at a price of $985, plus installation cost. Plaintiff's testimony, however, was that the orders for the product were always forwarded directly to the defendant which then shipped the purchased product to the customer and billed the customer direct. Upon collection from the customer, the plaintiff's commission, so to speak, computed at the difference recited herein, was remitted to him on several occasions by the defendant. The evidence for both parties also establishes that as to sales effected directly by plaintiff's efforts, the parties apparently reached an adjustment of proration where the actual sale price of the camera was less than $985, but there appears to be an issue between them as to the proper computation of the base price of the camera in certain instances where plaintiff's efforts directly effected the sale.

The plaintiff also testified that under the oral agreement he was to have an exclusive agency to sell or distribute this product unlimited as to territory. He was to receive, according to him, a commission on all cameras sold whether the sale was effected by him or not; he was also to receive an express percentage commission on the sale of all film furnished for use in all cameras sold during the period of the contract whether they were sold by the plaintiff or not. The plaintiff stated that this arrangement was to exist until the parties could agree on the terms of a written

agreement to be thereafter executed. In substance, his testimony was that the arrangement between the parties was to exist until a negotiated, formalized, integrated agreement could be finalized.

The defendant, through the testimony of Rector, its then president, and the testimony of Jay who succeeded Rector as president, and the testimony of Manske, an attorney who represented plaintiff in negotiations about the terms of the written agreement, admitted part of the arrangement but vigorously denied other elements of the claimed oral agreement. In essence, defendant's proof sought to establish that the parties merely agreed to attempt to formulate a subsequent written agreement under which they could satisfactorily operate. According to defendant, no exclusive distributorship or agency was ever granted, principally because a sales quota which plaintiff would have to sell during a determined time period was the subject of difference between them.

Furthermore, defendant contended that the agreement to sell cameras did not commence in February of 1961, but rather commenced in May of 1961. The defendant admitted terminating the agreement to pay commission on sales effected by the plaintiff in March of 1962, for the express reason that plaintiff had not made sufficient progress in setting up a distributorship system. The letter of termination admitted owing plaintiff a commission on a particular sale and promised that the plaintiff's account would be brought up to date and that he would be paid the commission due.

The defendant first argues that there was no enforceable agreement between the parties because a contract between them was never formed. The problem presented is discussed by the late Judge Goodrich with his usual clarity and conciseness in Smith v. Onyx Oil & Chemical Co., 218 F.2d 104 (3d Cir.1955): "If the parties intend not to be bound until a written memorial is executed by each, then they are not bound until that event takes place. On the other hand, although parties may intend to put their agreement in writing, it does not follow that they have not made a contract until the writing is completed and signed. * * * The emphasis of these two eminent writers (Williston and Corbin) is, it seems to us, inclined toward finding the formation of a contract prior to the signing of the document unless the parties pretty clearly show that such signing is a condition precedent to legal obligation. And since contract law has passed the formalism of elaborate doctrines pertaining to sealed instruments, it seems to us such emphasis is quite natural and quite correct." (Parenthetical expressions supplied).

■ The evidence of both parties to the dispute here clearly shows to us that so far as the sale of cameras and the payment of commission were concerned, the signing of an agreement was not a condition precedent. The parties continued in this relationship for over a year. Cameras were sold and commission was paid. We think a contract was formed. The enforceability of it is another matter.

■■ The defendant next asserts that the claimed agreement lacked mutuality of obligation in that plaintiff was obligated to do nothing. The question is thoroughly considered in Williston on Contracts, Third Edition, Sections 105 A and 1017 A. In David Roth's Sons, Inc. v. Wright and Taylor, Inc., Ky., 343 S.W.2d 389 (1961), we characterized the concept of mutuality of obligation as "rather elusive." In the instant case, when an obligation on the part of plaintiff to use his best efforts to sell the product is either found to be expressly agreed to as plaintiff says or if this obligation is necessarily implied and when it appears that the plaintiff agreed to not sell products similar to this one—then, even though the agreement be cancellable at the instance of either party, the parties were bound by mutual obligations in the respects enumerated for even a short peri-

od of time and the contract cannot be avoided by either party on this ground—particularly where the relief sought pertains to executed performance and not executory obligations. Cf. Fowler's Bootery v. Selby Shoe Co., 273 Ky. 670, 117 S.W.2d 931 (1938). We are of the opinion that the defense imposed by U.E.L. based on lack of mutuality of obligation is without merit.

■ The next argument advanced by the defendant and one on which it appears to place great reliance is that the agreement was unenforceable because of the "sale of goods for the price of $500 or more" section of the statute of frauds which is now incorporated into the Uniform Commercial Code and is embodied as statutory law in Kentucky at KRS 355.2–201. Defendant argues that by the plaintiff's own pleadings the agreement between them was a sale of goods for a price of $500 or more. We are not so persuaded.

Anderson's Uniform Commercial Code, Vol. 1, Section 2–201:2, p. 93, points out that the pattern of the former Uniform Sales Act is continued in this new section except that the content of the writing is simplified, the exception of non-resellable goods is made more strict and the exception on giving something in earnest is deleted. Thus, we perceive no change in the basic law concerning whether a particular agreement is one for the sale of personal services or for the sale of goods.

Stone v. Krylon, Inc., 141 F.Supp. 785 (D. C.E.D.Pa.1956), held that where the agreement was for performance of certain personal services for the defendant corporation and the defendant corporation promised to grant the plaintiff an exclusive agency to sell certain goods, the contract was one for employment and the consideration for the services was not wages or salary but a valuable franchise. There the court refused to declare the agreement unenforceable by reason of U.C.C. 2–201.

In his consideration of the Uniform Sales Act which preceded the U.C.C. as the law

in Kentucky, Williston said: "A contract creating an agency to sell goods is not a contract for the sale of goods and is not within the statute." Williston on Sales Revised Edition (1948), Section 58, p. 153. A contract under which a distributor undertook to secure new customers' accounts, take orders for specific territory, sell only the goods of the seller, and he, at the same time ordered from the seller a one-half year's supply of goods, was held an agency contract and not within the statute of frauds in Fargo Glass and Paint Company v. Globe American Corporation, 161 F.2d 811 (7th Cir.1947).

In City of Owensboro v. Dark Tobacco Growers' Ass'n., 222 Ky. 164, 300 S.W. 350, we pointed out that in determining whether an agreement between parties is a sale or is a mere contract of agency, isolated expressions in the instrument indicating whether it is one or the other are not necessarily controlling; on the contrary, the courts will ignore apparently inconsistent language used, and look to the real nature of the agreement between the parties, what its real purpose was, and what, from the nature of the transaction, must have been in the minds of the parties. We have no hesitation, in view of the proof and considering the pleadings in their entirety, in concluding that this agreement is not a sale of goods as such but is a contract for personal services and, therefore, KRS 355.2–201 does not preclude its enforcement.

The basis on which the trial judge granted the defendant judgment n.o.v. was that the oral contract established by the plaintiff could not be performed in a year's time. This one-year provision of the statute of frauds is embodied in KRS 371.-010(7).

■ The plaintiff argues that the general rule pertaining to contracts of employment should be applicable. The general rule is that contracts for employment or other performance that is to begin within a year and is to continue for an indefinite, unspecified period are terminable by either

party at any time and are held not to be within the one-year clause of the statute. Salyers v. Kenmont Coal Co., 226 Ky. 655, 11 S.W.2d 705 (1928), is an example of the application of that principle.

Defendant argues that where, from the nature of the contract, it cannot be performed in a year and the parties so contemplated in making it, the statute applies and the contract is unenforceable. Defendant cites such cases as Kentucky Utilities Company v. Hurst, 207 Ky. 448, 269 S.W. 525 (1925), and Curtiss Candy Company v. Silberman, 45 F.2d 451 (6th Cir. 1930). Corbin states that both the Hurst case and the Silberman case are not in accord with the trend of authority. See Corbin on Contracts, Section 446, p. 553. Williston declares: "A few jurisdictions, contrary to the great weight of authority, go beyond this and hold that the intention of the parties may put their oral agreements within the operation of the statute." Williston on Contracts, Third Edition Section 495, pp. 584, 585. Both the Silberman case and the Hurst case are cited as examples of the view which he criticizes. The problem is not so easily solved, however.

The enforceability of a contract under the one-year provision of the statute does not turn on the actual course of subsequent events, nor on the expectations of the parties as to the probabilities. Contracts of uncertain duration are excluded; historically, the statute has been consistently applied only to those contracts where performance cannot possibly be completed within a year. Therefore, although the criticism by Williston and Corbin of the cases cited by defendant may be valid when viewed in the light of the doctrine that expectations of the parties as to probabilities will not place a contract within the statute; nevertheless, if the testimony of the party seeking to enforce the contract is that it was factually impossible to perform his agreement within a year, then such contract must fall squarely within the statute.

We agree with the trial judge that the testimony of the plaintiff insofar as concerns the exclusive right-to-sell feature and the unlimited territory in which this exclusive franchise would exist was squarely that performance by him to secure such a comprehensive relationship by establishing a distributor in each major population area was factually impossible to be performed within a year. That was the plaintiff's own testimony. It did not go to expectations or probabilities. It was a plain statement of the impossibility of the performance expected of him within a year. We think that the plaintiff admitted his contract into the operation of the statute. Other instances are distinguishable where a plaintiff in similar situations has testified that he expected to remain in employment longer than a year or that he expected the relationship between the parties to exist for a period longer than a year. The vital point here is that the plaintiff testified to the factual impossibility of his own performance.

Defendant points out that our statute follows the English Statute of Frauds (29 Charles II, c. 3, enacted in 1677). It might be interesting to note that the provision of the English Act on which defendant relies was repealed in 1954 by the Law Reform (Enforcement of Contracts) Act (2 & 3 Eliz. II, c. 34) except for contracts of suretyship. Thus, the attitude in English law toward the supposed salutary policy of the statute now differs materially from ours. The plaintiff asserts that the one-year provision does not apply because the parties agreed to subsequently enter into a written agreement and, according to plaintiff's argument, since it was possible that this written agreement could have been effected within one year, then his present agreement is removed from the operation of the statute. That contention is rejected by Williston:

"Nor will a promisor be bound by an oral promise to enter into a written contract, if the written contract could not be performed within a year." Williston on

Contracts, Third Edition Section 495, p. 586.

We believe that the trial judge was correct in concluding that the plaintiff's oral agreement insofar as it undertook to bind the defendant to pay the plaintiff a commission on sales of cameras not effected by plaintiff and to bind the defendant to grant plaintiff an exclusive franchise unlimited as to territory and to receive payment for film sold for use by all cameras whether sold by plaintiff or not was unenforceable under the one-year provision of our statute of frauds.

What are the consequences of such holding to the plaintiff? It may be helpful at this point to determine what we are not dealing with. We are not dealing with a claim for breach of the agreement as such. We are not dealing with a claim for wrongful termination of the agreement. We are not dealing with any assertion of rights resting in the executory portion of the claimed agreement. We are not dealing with a claim for specific performance or other equitable relief. We are confronted with a claim for completed performance of a segment of an agreement which in itself is not within the statute of frauds while another segment is within the statute.

We have previously held that the sale-of-goods provision does not preclude enforcement. Certainly the sale of individual cameras and the payment of commission was performable within a year. It was the other portions of the agreement that fell within the statute. Therefore, we need not concern ourselves with the marked distinction between a true sales contract and a sale and distribution contract; nor do we need concern ourselves with such questions as the reasonableness of the termination as was true in Mid-Southern Toyota, Ltd., v. Bug's Imports, Inc., Ky., 453 S.W.2d 544 (rendered May 8, 1970).

The real issue now is: May plaintiff recover at the contract rate for the sale of cameras effected by him? We think he can. Defendant argues that in Louisville Trust Company v. Monsky, Ky., 444 S.W.2d 120 (1969), we held that quantum meruit could not be used to avoid the statute of frauds, and so we did in that instance; but to regard that as a general proposition is an erroneous overstatement. It is generally held that part-performance not amounting to full performance on one side does not in general take a contract out of the one-year provision. Restitution is available in such cases, and doctrines of estoppel and fraud may be applicable.

The Restatement of Agency Second, Section 468, page 398, clarifies the situation. Paragraph (2) of that section provides that where a statute declares that a person employing another for a specified purpose shall not be liable to the other for compensation, although the other renders the promised performance, unless the employer has signed a memorandum in writing, a person has no duty to pay another whom he orally employs for such purpose either the promised compensation or the reasonable value of the services rendered. Paragraph (3) provides that, except as stated in paragraph (2), an agent who has partially or fully performed a contract which is not enforceable because a memorandum thereof has not been signed, is entitled to the fair value of services rendered if the principal refused to perform the contract or to sign a memorandum. The distinction is simply this: To allow any recovery under the situation described in paragraph (2) of the section would defeat the very purpose of the statute. To allow quantum meruit recovery in other instances has been consistently done and has been regarded as in accord with the purpose of the statute rather than a defeat of it.

The issue here, however, is not restitution, but express contract. Where a part of an oral contract is within the statute of frauds for the reason that it may not be performed within one year and a part is not covered by the statute, if the consideration for both parts is not divisible

and apportionable, or if such parts are interdependent, neither part can be enforced. Implicit in that statement is the corollary that if the consideration for both parts is divisible and apportionable and if the parts are independent, then the part not within the statute when fully performed may be enforced at the contract rate. This idea is well expressed in the case of Blue Valley Creamery Co., v. Consolidated Products Co., 81 F.2d 182 (8th Cir.1936). In that case the court pointed out that a divisible contract, using the term properly, is always one contract and not several contracts. It differs in one respect only from other contracts—namely: that on performance on one side of each of its successive divisions, the other party becomes indebted for the agreed price of the division. We regard this contract as falling within that category. See Annotation, Statute of Frauds, Divisibility, 71 A.L.R. 479, 492. The same general theory is applied to the recovery of salary already earned and unpaid where the employment contract is within the one-year provision of the statute of frauds. See note 6 A.L.R.2d 1053, 1077.

In this particular case and confining the decision to precisely this agreement and this form of action for completed performance, we hold that the plaintiff is entitled to recover the agreed compensation on the sales of cameras in those instances where the sale was effected by him prior to the termination of the agreement. The verdict is inseparable as to what portion of it represents that which the plaintiff may legally recover and that which he may not. Since we conclude that the defendant was not entitled to a directed verdict at the conclusion of all the evidence except as to a portion of the plaintiff's claim, it follows that the action of the trial court in sustaining the defendant's motion for a judgment n.o.v. was error. At that point there was no real contrariety in the evidence concerning the plaintiff's right to recover that portion of his claim which we have adjudged he was entitled to receive, nor was there any real contrariety in the evidence concerning the operative facts which barred enforcement of the other portion of the claim. Hence, the matter should have been submitted to the jury under the theory that plaintiff was entitled to compensation for the sale of the various cameras effected by him until the termination of the agreement.

It is unnecessary to consider the effect of defendant's failure to procure a ruling on his alternative motion for a new trial under CR 50.03. The trial judge stated in his written opinion that the "defendant concedes his only real ground for relief is applicability of the statute of frauds." Defendant does not deny that representation to the trial court in its brief on this appeal. In any event, our review of the evidence convinces us that the concession was well taken. The plaintiff is not entitled to have the verdict restored, as defendant was entitled to a partial directed verdict. Therefore, our only alternative is to remand the case for further proceedings. We are confident that upon a retrial the trial judge will evaluate the evidence as to whether the plaintiff has been paid in full and determine whether a jury issue is presented in that respect.

The judgment is reversed with directions for further proceedings consistent with the opinion.

HILL, C. J., and MILLIKEN, OSBORNE, PALMORE and STEINFELD, JJ., concur.

NEIKIRK, J., not sitting.