369 N.W.2d 631 (1985)
220 Neb. 295
OMAHA WORLD-HERALD COMPANY, a Corporation, Appellee,
v.
Don NIELSEN, Appellant.
No. 84-537.
Supreme Court of Nebraska.
June 28, 1985.
*633 Lavern R. Holdeman of Nelson, Morris & Holdeman, Lincoln, for appellant.
Thomas C. Sattler of Knudsen, Berkheimer, Richardson & Endacott, Lincoln, for appellee.
BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired.
BRODKEY, Justice, Retired.
The Omaha World-Herald Company, appellee herein, brought suit against Don Nielsen, appellant herein, to recover money due and owing as the result of a distributorship agreement. The suit consisted of three causes of action. The first cause of action sought to recover the balance due for newspapers sold and delivered to appellant. The second cause of action sought to recover the cost of insurance premiums paid by appellee on behalf of appellant. The third cause of action sought the balance due on accounts receivable. Appellant generally denied all the allegations raised by appellee and counterclaimed for the return of a security deposit.
The parties waived a jury trial, and the matter came to trial before the Honorable Dale E. Fahrnbruch in the district court for Lancaster County, Nebraska, on November 21, 1983. The court found for the appellee, dismissed the counterclaim of the appellant for lack of evidence, and awarded appellee the full amount of its claims. This appeal followed, in which several issues are raised. First, that the trial court erred in admitting certain business records introduced by the appellee. Second, that the deposition of appellant, read into evidence at trial, established that appellant did not owe the amounts in controversy, and thus the verdict was against the weight of evidence and should be reversed. Third, that the distributorship agreement had been orally modified by the parties to eliminate appellant's liability, which fact had been proved at trial, and the verdict against appellant was *634 thus clearly erroneous. Fourth, that the oral modification was not within the statute of frauds because it involved a mixed contract for the sale of goods and services and was not a contract primarily for the sale of goods. We discuss these issues seriatim.
The first issue concerns the admission of certain business records. Appellant objects to the admission of this evidence on the grounds of lack of foundation and failure to produce necessary underlying documentation. It is contended that the admission of this evidence was prejudicial to appellant and, as such, the verdict rendered should be reversed. In support of this argument appellant asserts that the law requires the best evidence availablein this case, the actual invoices and credit memos prepared during the course of the business relationship between the parties. Appellant relies on Bitler v. Terri Lee, Inc., 163 Neb. 833, 81 N.W.2d 318 (1957), and Chicago & N.W. Ry. Co. v. City of Norfolk, 157 Neb. 594, 60 N.W.2d 662 (1953), in support of this contention.
The cases do not support appellant's reasoning. In Bitler the court stated that the best evidence would allow the court to fix damages with "reasonable certainty and exactness." 163 Neb. at 851, 81 N.W.2d at 328. The court allowed information contained in books which had been kept in the ordinary course of business to be admitted into evidence. The sponsoring witness was an accountant who had periodically inspected the books, done accounting and auditing of the books, prepared various financial statements, and made various computations from the books. Thus, the business records were admitted without the introduction of all supporting documentation and without a witness with firsthand knowledge of every transaction.
Chicago & N. W. Ry. Co., supra, appears to state the old best evidence rule. Upon a closer examination, however, the case stands for a more narrow proposition. The court stated that evidence adduced at trial must be competent and relevant. It must be the best evidence which most naturally and satisfactorily proves the facts. The court then affirmed the admission of a formula used by the railroad to apportion costs to reach an average cost per mile and rejected a challenge that would have required the railroad to match each individual cost and revenue. Thus, the court affirmed the introduction of business records without requiring an indepth documentation of the information contained in the records.
Further, Neb.Rev.Stat. § 27-1002 (Reissue 1979) states the best evidence rule as currently recognized in Nebraska. It requires the production of an original document unless the situation qualifies as an exception to the general rule. One such exception is Neb.Rev.Stat. § 27-1003 (Reissue 1979) which will allow a duplicate to be admitted unless there is a genuine issue of fact raised as to the authenticity of the original or to admit the duplicate would be unfair to the opposing party. Here, appellant does not dispute the authenticity of the document nor contend that its introduction was unfair. Instead, appellant contends that the introduction was improper because the invoices were not substantiated by underlying documentation. As noted in Bitler and Chicago & N.W. Ry. Co., supra, both of which were decided before the adoption of the new Nebraska Evidence Rules, it is not necessary to establish every transaction in order to introduce business records.
It is well settled in Nebraska that business records may be admitted into evidence upon meeting certain criteria. The criteria were first established under the common law and then expanded upon under the Uniform Business Records as Evidence Act. Neb.Rev.Stat. §§ 25-12,108 to 25-12,111 (Reissue 1956) (repealed, 1975 Neb. Laws, L.B. 279, § 75). In Transport Indemnity Company v. Seib, 178 Neb. 253, 132 N.W.2d 871 (1965), this court noted that the act was designed to permit systematically recorded business records to be admitted without requiring the testimony of each individual who made the entries. To qualify for admission the records must be identified and sufficient foundation established *635 to show the records were prepared in the ordinary course of business. Further, the individual claim files and reports were not required to authenticate the bookkeeping records.
Transport Indemnity was cited by a federal court to support the admission of an annual statistical record. United States v. Russo, 480 F.2d 1228 (6th Cir.1973). An objection to the report was entered because the report had been produced 11 months after the close of the fiscal year. The court rejected that challenge because the information had been placed in the computer at a reasonable time after the transactions in question and the report introduced at trial was taken only from that evidence. The court also rejected the assertion that the report was an inadmissible summary, because the information had been stored in the computer in a predetermined way which enabled various kinds of reports to be made from it. The court also rejected a foundational challenge aimed at the sponsoring witness. Rather than require firsthand knowledge of the data placed in the computer, the court found it sufficient that the witness was familiar with the input of information into the machine and its general accuracy. The court noted that such a witness was capable of being cross-examined by the opposing counsel as to the procedure and accuracy of the billing procedure.
The admission of business records is controlled by the "business records" exception to the hearsay rule as adopted in the Nebraska Evidence Rules in 1975. This court had an opportunity to address this issue in Chalupa v. Hartford Fire Ins. Co., 217 Neb. 662, 350 N.W.2d 541 (1984), wherein a threefold test was set out. First, the recorded activity must occur within the ordinary course of business. Second, the record must have been produced at or near the time of the transaction in question. Third, the record must be authenticated by a custodian or other qualified witness. Further, the trial court has broad discretion to determine the foundational requirements of such evidence.
Consequently, the testimony adduced at trial was not inadmissible for lack of supporting data as long as the three foundational requirements were met. First, the invoices reflected information recorded at or near the time the transactions occurred between the parties. Second, the information contained on the invoices was recorded information which represented the normal course of business between the parties. Third, the record was authenticated by a witness who was familiar with the business procedure and who could have been cross-examined as to the system's accuracy. Even if the admission had been an error, it would not change the result.
Under the Nebraska version of the business records exception, questions as to the authenticity or credibility of the evidence or the testimony would go to the weight of the evidence. The trial court is given great discretion in this area. Neb. Rev.Stat. § 27-803(5) (Reissue 1979). The decision of a trial court as to the weight of evidence and its findings of fact when sitting as the trier of fact will not be set aside unless clearly wrong. Nerud v. Haybuster Mfg., 215 Neb. 604, 340 N.W.2d 369 (1983). For the reasons stated earlier the trial court was not clearly wrong in admitting the invoices over objection and will not be reversed for so doing.
The second issue raised by appellant concerns the deposition read into evidence at trial. Appellant contends that the testimony thus stands as uncontroverted that Nielsen did not owe the balances alleged by appellee. In support of this contention appellant cites Hyde v. Cleveland, 203 Neb. 420, 279 N.W.2d 105 (1979), and Luikart v. Korbmaker, 128 Neb. 199, 258 N.W. 263 (1935). These cases do not offer support for appellant because they stand for a narrow view of the law as pertains to the introduction into evidence of the admissions and statements against interest of a party to the action when used against that party. In Hyde the trial court had refused to allow the admissions and declarations of the defendant into evidence. This was *636 viewed as error because the plaintiff had been denied the opportunity to impeach the credibility of the defendant when such credibility was a material issue in the case. Similarly, Luikart involved the admission of a party opponent, which had erroneously been excluded. Further, the testimony of appellant does not stand unrebutted. Appellee produced evidence and testimony which tended to indicate that money was due and owing and that appellant was aware of the debt. It was an issue of fact, decided by the trier of fact, which is not clearly wrong; thus, it will not be disturbed. Nerud, supra.
Further, it is well settled in Nebraska law that the findings of the court where a jury is waived have the effect of a jury verdict. On appeal, controverted facts will be viewed in the light most favorable to the successful party. That party will be given the benefit of every inference available from the record. Morfeld v. Bernstrauch, 216 Neb. 234, 343 N.W.2d 880 (1984). In the case at bar the trial court was in the best position to hear the evidence and perceive the witnesses. Upon a consideration of the facts in the light most favorable to appellee, the trial court's findings are supported by the evidence and are affirmed.
The final issues concern an alleged oral modification of the distributorship agreement. Appellant contends that such a modification was proved at trial and that the statute of frauds was no defense because the contract was a mixed contract for goods and services. Alternatively, even if the contract was within the statute, because appellant fully performed the contract, the modification was valid under Neb.U.C.C. § 2-201(3)(c) (Reissue 1980). Full performance, it is urged, consisted of turning over the business to the World-Herald.
By way of defense appellee points to the record wherein appellant referred to the transaction in a variety of ways, including "turned over" and "sold." Appellee further notes that only occasional references in the deposition were used to support the existence of such an agreement. Appellee also disagrees with a characterization of the agreement as anything but a sale of goods. In support of this contention appellee points to the distributorship agreement, which seems to contemplate the outright sale of newspapers as its primary focus. Further, appellee denies that the termination of the distributorship constituted full performance of a modification.
Under Nebraska law a sale of goods for the price of $500 or more is not enforceable by way of action or defense unless it is in writing. § 2-201(1). An exception to this rule is contained in § 2-201(3), which is applicable when goods for which payment has been received are accepted. If an existing contract is modified, such modifications must also fall within the statute or an exception. Neb.U. C.C. § 2-209 (Reissue 1980). Appellant argues that the distributorship agreement was primarily for the services of delivering newspapers and that the payment received by Nielsen was in the nature of a commission. As such, the case is similar to Glover Sch. & Office Equipment v. Dave Hall, 372 A.2d 221 (Del.Super.1977). In Glover the court determined that a contract for the sale and installation of school equipment was a mixed contract and was primarily for the sale of services; thus, it was not within the statute. The court set out several factors to test a contract such as this. The factors included the negotiation of the contract, its formation, and its contemplated performance. Further, the cause of action raised at trial would be considered and in some cases would be dispositive of the classification of the contract. See, also, Mennonite Deaconess Home & Hosp. v. Gates Eng'g Co., 219 Neb. 303, 363 N.W.2d 155 (1985).
Upon applying this test to the contract before the court, it would appear that the contract was primarily for the sale of goods. The negotiations between the parties centered on the price of the newspapers rather than the type of service to be performed. The contract was formed in terms of "purchaser" and "seller." The *637 parties apparently contemplated that appellant would buy papers at wholesale and resell them. Appellant also paid for the papers outright and was responsible for collecting all amounts due from the customers, which tends to negate any inference that appellant received a commission.
Appellant cites Buttorff v. United Electronic Laboratories, Inc., 459 S.W.2d 581 (Ky.App.1970), in which the court found a contract was for services, due in part to the fact that the company retained control of the product and billing procedure at all times. The case at bar is distinguished from Buttorff in that appellee did not retain control over the papers or the billing process. Instead, appellant bought the papers outright and resold them at a profit. The delivery of papers was an important incident of the contract, but was a benefit to both parties; indeed, it was the reason for the agreement, in a broad sense. As regards the individual customers, however, appellant provided the services, collected subscriptions, and received payment. The distributorship agreement provided the terms for the sale of papers to appellant, who then resold the papers at a profit. While such a sale did provide a service to appellee, its primary function was to allow the parties to buy and sell papers at an agreed price.
Consequently, the alleged modification was within the statute of frauds because it concerned the sale of goods at a value greater than $500. Similarly, it is no defense to claim, in this case, that full performance on the part of appellant took the oral modification out of the statute. First, no evidence was adduced at trial to support a finding of an oral modification, except the testimony of Nielsen himself. Even his testimony was not clear on this modification and its terms. The oral modification was denied by appellee; thus, an issue of fact was presented to the trier of fact. The court ruled in favor of appellee. As noted earlier, the findings of fact by the court, where a jury is waived, have the effect of a jury verdict and will not be reversed unless clearly wrong. Nerud v. Haybuster Mfg., 215 Neb. 604, 340 N.W.2d 369 (1983). It is readily apparent from the record that sufficient evidence was presented from which a reasonable person could reach a decision as to the existence of an oral modification; thus, the verdict will not be disturbed.
In summary, the trial court did not err in admitting the business records of appellee into evidence. Such admission is authorized by § 27-803(5) when sufficient foundation is laid to meet the threefold test as set out above. In this case sufficient foundation was laid and the evidence properly admitted. Secondly, the trial court had sufficient evidence from which to find that an alleged oral modification had not changed the rights of the parties. Even if the oral modification had been proved, the statute of frauds was properly raised as a defense because the original agreement was primarily for the sale of goods. Finally, appellant failed to prove that the termination of the agreement constituted full performance of the alleged oral modification so as to take the modification out of the statute. The verdict of the trial court is affirmed.
AFFIRMED.