585 A.2d 437

AROUND THE WORLD MERCHANDISERS, INC., A NEW JERSEY CORPORATION, PLAINTIFFS, v. RAYOVAC CORPORATION, A FOREIGN CORPORATION, H.J. (JERRY) GUTTMAN, CHARLES GILDEA AND STEVEN FANTUS, DEFENDANTS.

Superior Court of New Jersey
Law Division Union County

Decided November 5, 1990.

*Bruce M. Pitman* for plaintiffs (*Pitman & Pitman,* attorneys).

*John S. Skilton* for defendant Rayovac Corporation (*Foley & Lardner*, attorneys).

*Craig R. Tractenberg* for defendants Rayovac Corporation, H.J. (Jerry) Guttman, Charles Gildea and Steven Fantus (*Abraham, Pressman & Bauer*, attorneys).

MENZA, J.S.C.

Defendant moves for summary judgment. The issue in this case is whether the statute of frauds bars the enforcement of an oral contract between a manufacturer and a middleman engaged by the manufacturer to solicit and service customers for the sale of the manufacturer's product. There are no New Jersey cases which have addressed this precise issue.

Defendant is a manufacturer of batteries. Plaintiff is a wholesaler of general merchandise. In order to promote the sale of its batteries, defendant instituted a marketing program known as the "checkout merchandising program." This plan provided that a retailer who agreed to participate in the program would receive, at no charge, battery display racks and a quantity of batteries for the initial stocking of the racks. In order for the retailer to receive the free racks and the free quantity of batteries, he would first have to agree to display the batteries in the display racks for a period of four years. In the event it failed to do so, the retailer agreed to pay a termination fee to defendant. The fee would be 100% of the value of the free batteries if the retailer cancelled within the first year, 75% if he cancelled in the second year, 50% in the third year and 25% in the fourth year.

The program also included wholesalers. The wholesalers were to obtain orders from retailers for the sale of defendant's batteries which would then be shipped to the retailer by the manufacturer. For each initial rack of batteries placed by the wholesaler in a retailer's store, the wholesaler would receive, at no charge, half as many batteries as were shipped to the participating retailers. The program contemplated that the

wholesaler would then use their "free batteries" to restock the batteries sold by the retailer. The wholesaler was then responsible for servicing the accounts by insuring that the racks were properly displayed and replenished over the life of the contract. If the retailer terminated the program at anytime within a four-year period, the wholesaler would be responsible for the appropriate percentage of the termination fee. On May 11, 1987, the parties entered into an oral wholesaler agreement. Plaintiff thereafter obtained numerous orders to place defendant's batteries in various retail stores. Defendant refused to fill the orders contending that plaintiff failed to abide by certain terms of the oral agreement. Plaintiff has brought suit for breach of contract in which he seeks the money equivalent of the free batteries to which he claims he was entitled under the agreement with defendant.

■ Defendant contends that the statute of frauds bars plaintiff's claim because the oral agreement made by the parties involves the sale of goods for the price of $500 or more. Plaintiff responds that the statute of frauds is inapplicable because the agreement was for services and not for the sale of goods.

The New Jersey statute of frauds, *N.J.S.A.* 12A:2–201, provides:

> (1) ... a contract for the sale *of goods* for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

Was the agreement between defendant manufacturer and plaintiff middleman one for the sale of goods or was it solely an agreement in which plaintiff agreed to act on behalf of defendant in order to sell its goods to retailers and thus a contract of service?

Defendant makes two arguments that the agreement was for the sale of goods. Defendant argues that the agreement falls within the statute of frauds regardless of whether title vested

in plaintiff, because the thrust and purpose of the agreement was for the sale of goods. Defendant also argues that the contract contemplated a sale of goods by defendant directly to plaintiff for a price which consisted of plaintiff's services.

With regard to defendant's argument that the contract falls within the statute of frauds even if title did not vest in plaintiff; defendant argues that because the thrust and purpose of the agreement was for the sale of goods, *i.e.*, to sell defendant's product to the public it falls within the statute of frauds. There is no question that the thrust and purpose of the agreement was to sell batteries. It was the *"raison d'etre"* for the agreement between the parties. But this does not in itself place the agreement within the purview of the statute of frauds.

The cases cited by defendant, specifically *Wico v. Willis Industries*, 567 *F.Supp.* 352 (N.D.Ill.1983), and *Songbird Jet Ltd. v. Amax, Inc.*, 581 *F.Supp.* 912 (S.D.N.Y.1984), for the proposition that the statute of frauds applies to a distributor's agreement with a manufacturer whenever the distributor is to sell goods to third persons are misapplied to this case. The cases to which defendant refers deal with either a sale to the distributor who in turn sells to third persons or agreements involving both a sale and services, where the sale aspect of the agreement predominates.

This court is not able to find any decisions which stands for the proposition that a distributor's or middleman's oral agreement with a manufacturer to sell goods to a third person must be in writing when the distributor or middleman does not obtain title to the goods. In fact, the authority is to the contrary.

In *Corpus Juris Secundum*, it is stated:

In order for the statute of frauds to apply, the transaction or agreement must constitute a sale or contract to sell, an agreement as to the sale of property other than one between the buyer and seller is not within the statute.

An agreement by an agent and principal as to the purchase or sale of goods by the agent for the principal is not within the statute. [37 *C.J.S.*, Statute of Frauds, § 141 at 624-625]

In 3 *Williston, Contracts* § 512 (3d ed. 1960), § 512, it states:

A contract created an agency to sell goods is not a contract for the sale of goods, and is not within the statute. [at —]

In *White Summers, Uniform Commercial Code* (1980), § 2–2, it states:

It [§ 2–201], does not apply to contracts of employment, or commission or brokerage even when these look to the sale of goods.

In *American Jurisprudence*, the author states:

In most jurisdictions, statutes require contracts for the employment of another as agent or broker in negotiating a purchase or sale of real estate to be in writing, but as a general rule no provision of the statute of frauds is expressly made applicable to brokers and other agents employed to buy and sell personal property. It is self-evident that a commission or agency to purchase personal property is not, as between the principal and agent, a contract for the sale of property by the one to the other within the meaning of the provision of the statute of frauds requiring all contracts for the sale of goods, exceeding in value a stipulated sum, to be in writing, and the agent has his ordinary remedies against his principal for reimbursement, although the contract is not in writing. An oral agreement to purchase personal property in one's own name for the joint benefit of himself and another has been held not to be within the statute. It has also been held that an agreement to find a purchaser of property for the owner is not within the statute. [72 *Am.Jur.*2d, *Statute of Frauds*, § 134 at —]

In 2 *Corbin, Contracts* (1950), § 473, it is noted:

**Sale of Goods to or From a Third Person**

To fall within the seventeenth section of the statute or the corresponding section of the Uniform Sales Act, the contract must be one for the sale of goods from one of the contracting parties to the other. Sometimes it is not easy to determine the exact character of a transaction. If the agreed performance involves the transfer from one to the other of an undivided or other partial interest in goods, it is within the statute; ... A contract by an agent to buy goods of third persons for his principal is not within the statute, even though the agent is to pay for the goods out of his own money advanced for the purpose. [at —]

Similarly, in *Stone v. Krylon, Inc.*, 141 *F.Supp.* 785 (E.D.Pa. 1956), the court held that an oral agreement in which defendant manufacturer agreed to give to plaintiff an exclusive distributorship if plaintiff developed a product for defendant, was not within the statute of frauds. The court stated:

> The contract here, however, is not a contract of sale. In essence it is a contract involving two principal elements: (a) plaintiff's performance of certain personal services for defendant and (b) defendant's promise to grant plaintiff the exclusive agency to sell certain goods. This is a contract of employment, the consideration for the services being not wages or salary but a valuable franchise. [at 785]

In *Fargo Glass & Paint Co. v. Globe American Corporation*, 161 *F*.2d 811 (7 Cir.1947), the court held that a contract, under which a distributor secured new customer's accounts, took orders for a specific territory, agreed to sell only the goods of the seller, and ordered from the seller a one-half year's supply of goods, was an agency contract and not within the statute of frauds.

In *Buttorff v. United Electronic Laboratories, Inc.*, 459 *S.W.*2d 581 (Ky.1970), the court, citing *Stone v. Krylon, Inc.*, held that this statute of frauds did not cover an oral contract pursuant to which plaintiff was to develop markets and establish a distributorship for cameras manufactured by defendant. See also *Brown v. Lee*, 242 *Ark.* 122, 412 *S.W.*2d 273 (1967) (oral agreement for real estate broker to sell real estate for builder for a commission, not within the statute of frauds); *Barker–Miller Distributing Co. v. Berman*, 8 *F.Supp.* 60 (W.D.N.Y.1934).

Defendant's second argument is that the statute of frauds applies because title to the batteries was to vest in plaintiff prior to their sale to the retailer. It contends that plaintiff was to pay for the batteries by rendering services for defendant, mainly obtaining orders for batteries from retailers and insuring that the display racks were always filled. (Services may constitute the price of goods (*N.J.S.A.* 12A:2–304(1)).

Defendant relies on defendant manufacturer's wholesaler agreement which, although not signed by the parties, he contends is nevertheless indicative of the intent of the parties that title should pass to plaintiff as the distributor of the goods.

Defendant disagrees. He also refers to the wholesaler agreement but interprets that agreement to mean that title to the

batteries would vest in plaintiff only with regard to the free batteries to be earned by plaintiff on the first shipment.[1]

A question of fact has therefore been presented. In the event that it is determined that the agreement provides that title to the batteries transferred to plaintiff prior to their sale to the retailer, the statute of frauds is to be applicable. If, on the other hand, the agreement provides that title to the goods would vest in the retailer only, then the statute of frauds is not applicable to the agreement made by the parties.

---

[1]The clauses in question state:

*Initial Discovery*

2. RAYOVAC will deliver to Wholesaler's Designated Customers at no charge RAYOVAC Battery Dispensers in the amounts, sizes and types provided in the attached work sheet (the "Work sheet") for installation in the Designated Customers' retail stores served by Wholesaler.

3. For each retail store of Designated Customer in which an RBD shall be installed, Wholesaler will order and RAYOVAC will deliver a minimum initial delivery ("Initial Delivery") of batteries in the quantities, sizes and at the prices specified in the Work Sheet.

4. Title and risk of loss of the RBDs and the batteries will pass to the Wholesaler upon delivery.