**Thomas C. BLAIR and Courtesy Auto Plex, Inc., Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Civ. A. No. C93–0189P(H).**

United States District Court, W.D. Kentucky, Paducah Division.

Dec. 15, 1993.

William E. Taylor, Taylor & Granner, Paducah, KY, Stanley Morganstern, Morganstern, MacAdams & Co., Nicholas M. DeVito, Cleveland, OH, for plaintiffs.

Thomas A. Prewitt, Joseph E. Conley, Jr., Dinsmore & Shohl, Florence, KY, Carol H. Lesnek–Cooper, General Motors Corp., Detroit, MI, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This case is before the Court on Defendant's Motion to Dismiss for failure to state a claim to relief. Fed.R.Civ.P. 12(b)(6). The Court has reviewed the various memoranda and has discussed the issues with counsel. For the reasons set forth in this memorandum opinion, the Court will sustain Defendant's Motion.

### I.

In reviewing Defendant's Motion to Dismiss the Court must accept as true the material facts as Plaintiffs present them. *Collins v. Nagle*, 892 F.2d 489, 493 (6th Cir.1989). Blair and Courtesy Auto (hereinafter collectively referred to as "Plaintiff") are dealer, operator and owner of a Pontiac General Motors truck dealership. Plaintiff operates that dealership under a General Motors ("GM") Dealer Sales and Service Agreement.

On December 5, 1992, Plaintiff executed an agreement of sale of business assets with Chuck Mullen Oldsmobile–Nissan, Inc. ("Mullen Oldsmobile"), in which Plaintiff agreed to purchase the assets of Mullen Oldsmobile and Mullen Oldsmobile agreed to transfer its General Motors, Oldsmobile Division, franchise to Plaintiff (this agreement of December 5, 1992, is hereinafter referred to as the "Purchase Agreement"). Among other things, the Purchase Agreement expressly provides:

> 7. Seller and Purchaser agree that this Agreement is subject to approval from General Motors. This Agreement is contingent upon said approval.

Mullen Oldsmobile operated its dealership pursuant to a GM Sales and Service Agreement (the "Mullen/GM Agreement"). Among other things, the Mullen/GM Agreement provided GM a right of first refusal in the event Mullen Oldsmobile proposed to sell its dealership to a third party; stated that GM should exercise its right of first refusal within 60 days of notification of the agreement to acquire Mullen Oldsmobile; and provided that GM pay a purchase price to match any bona fide agreement. The Mullen/GM Agreement also contained the statement that its provisions were not intended for the benefit of or to be enforceable by a third party.[1]

---

1. Relevant parts of the Mullen/GM Agreement provide:

    12.2 Other Changes in Ownership or Management.

    If Dealer proposes a change in Dealer Operator, a change in ownership, or a transfer of the dealership business or its principal assets to any person conditioned upon Division's entering into a dealer agreement with that person, Division will consider Dealer's proposal and not arbitrarily refuse to approve it, subject to the following:

    12.2.1 Dealer agrees to give Division prior written notice of any proposed change or transfer described above. Dealer understands that if any such change is made prior to Division's approval of the proposal, termination of this Agreement will be warranted and Division will have no further obligation to consider Dealer's proposal.

    12.2.2 Division agrees to consider Dealer's proposal, taking into account factors such as (a) the personal, business, and financial qualifications of the proposed dealer operator and owners, and (b) whether the proposed change is likely to result in a successful dealership operation with acceptable management, capitalization, and ownership which will provide satisfactory sales, service, and facilities at an approved location, while promoting and preserving competition and customer satisfaction.

    12.2.3 Division shall notify Dealer in writing of Division's decision on Dealer's proposal within 60 days after Division has received from Dealer all applications and information reasonably requested by Division. If Division disagrees with the proposal, it shall specify its reasons.

    12.3.1 Creation and Coverage. If Dealer submits a proposal for a change of ownership under Article 12.2 Division will have a right of first refusal to purchase the dealership assets regardless of whether the proposed dealer is qualified to be a dealer.

    12.3.2 Purchase price and other terms of sale (a) bona fide agreement. If a Dealer has entered into a bona fide written buy/sell agreement, the purchase price and other terms of sale will be those set forth in such agreement in any related documents, unless dealer and division agree to other terms.

    17.9 No third party benefit intended. This agreement is not enforceable by any third parties and is not intended to convey any rights or benefits to anyone who is not a party to this agreement.

Mullen Oldsmobile notified GM of its Purchase Agreement with Plaintiff on December 5, 1992. GM exercised its right of first refusal on March 25, 1993, or some 110 days after it was first notified by Mullen Oldsmobile.

Mullen Oldsmobile has not objected to GM's decision denying approval of the Purchase Agreement. Mullen Oldsmobile did not seek review of that decision under KRS 190.047 nor did Mullen Oldsmobile exercise any of its other rights under that statute. Neither did Mullen Oldsmobile object to GM exercising its right of first refusal or to the manner or time in which GM exercised that right.

Plaintiff asserts that it complied with all required application criteria and, in fact, has been an approved General Motors dealer for Pontiac and GMC trucks for over 14 years. Plaintiff complains that Defendant wrongfully prevented completion of the Purchase Agreement and asserts three separate causes of action in support of its contentions.

## II.

Count I of the complaint asserts that Defendant has violated the Kentucky Automobile Dealer Act, KRS 190.010, et seq., which regulates automobile manufacturers in dealing with their motor vehicle franchise dealers. The Court, finding no published opinions interpreting the intended reach of this statute, therefore, must attempt to project how Kentucky courts would rule on this question. *Erie Railroad v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Overstreet v. Norden Lab.,* 669 F.2d 1286, 1290 (6th Cir.1982)

KRS 190.047 regulates the transfer of motor vehicle sales franchises.[2] Clearly, the purpose of these provisions is to protect the dealer's interests. The *dealer* submits the proposal. KRS 190.047(2). The manufacturer responds to the *dealer. Id.* If the manufacturer refuses to approve the transaction, the state commission may hold a hearing at which the *dealer* has the burden of proof. KRS 190.047(4). Although not stated directly, it is apparent that the *dealer* must initiate such a review or, at least, prosecute the matter in order to meet the required burden of proof.

Plaintiff argues that the word "dealer" should be construed broadly to cover any party seeking to purchase a franchise. However, a fair reading of the statute shows that it is designed to protect dealers in their direct contractual relationships with the manufacturer. The statute does not contemplate the protection of third parties. The statute protects those having a certain relationship, not merely those with a particular *status,* since the dealer needs protection in the direct contractual give and take, not merely in its otherwise unrelated status as a dealer.

The entire scheme of the legislation beginning in subparagraph 2 wherein it states that

**2.** The statute provides in part as follows:

KRS 190.047. Transfer of Motor Vehicle Sales Franchise—Establishment of Additional New Motor Vehicle Dealership.

(1) Unless a franchise specifically states to the contrary, no franchise or any interest therein may be sold, transferred, or assigned without the approval of the manufacturer or distributor.

(2) A dealer desiring to sell, transfer or assign all or any portion of his franchise shall submit a written proposal of such sale, transfer or assignment to the manufacturer or distributor, and approval of such proposal shall not be arbitrarily or unreasonably withheld.

(3) The refusal of the manufacturer or the distributor to approve a proposed sale, transfer or assignment shall be subject to review by the licensor, provided a written application for review is filed with the licensor, with notice to the manufacturer or distributor, within thirty (30) days of the date of such refusal and such refusal shall not be final until the licensor, after a hearing has been held in accordance with the provisions of KRS 190.057, has determined that the approval was not arbitrarily or unreasonably withheld. The licensor shall make such determination within ninety (90) days after the application for review has been filed with the licensor.

(4) The burden of proof shall be on the dealer to show that the approval of the sale, transfer or assignment of any interest in the franchise was arbitrarily or unreasonably withheld. Factors to be considered in determining whether the manufacturer or distributor acted arbitrarily or unreasonably shall include whether the basic financial and facility requirements of the franchise will be met by the proposed transfer, sale or assignment and that the proposed purchaser, transferee or assignee is capable of operating, managing and supervising the operation of the business in question.

The statute also contains subparagraphs (5) through (10).

"a dealer desiring to sell, transfer or assign all or any portion of his franchise ..." implies an intention to protect the legitimate, and sometimes unfairly represented, interests of a particular dealer having a direct relationship with the franchisor. In fact, nothing in the statutory language indicates the Kentucky legislature's intention to protect or otherwise provide an administrative remedy for third parties not having a contractual relationship with the manufacturer.

From the Court's examination of KRS 190.047, as applied here, the statute was designed and written to protect dealers such as Mullen Oldsmobile and not those having the interests asserted by Plaintiff. Therefore, Plaintiff has no standing to assert a cause of action under the Kentucky Automobile Dealer Act.

### III.

■ In Count II of the complaint, Plaintiff asserts that Defendant has breached the Mullen/GM Agreement by failing to approve Mullen Oldsmobile's proposed purchaser, Plaintiffs. However, unless Plaintiff is a third party beneficiary to the contract, it may not assert contract rights properly belonging to Mullen Oldsmobile.

■ In this case, the Mullen/GM Agreement specifically provides that third parties have no rights under the contract and that the agreement is not a third party beneficiary contract. Any interpretation of the Mullen/GM Agreement must give weight to this statement. Even if the Mullen/GM agreement did not specifically say this, it would, nevertheless, be so. The Mullen/GM agreement is primarily concerned with governing relations between the two parties and to protecting and regulating their valid mutual interests. In no express or implied manner does it convey a special benefit to any specified or unspecified third parties. Absent any proposal by Plaintiff that it could present any evidence that a contract was entered for its direct and primary benefit, the language of the agreement will control, and Plaintiff accordingly may not claim the authority to enforce that contract. *Simpson v. JOC Coal, Inc.,* 677 S.W.2d 305, 307 (Ky.1984); *United*

*States v. Allstate Ins. Co.,* 754 F.2d 662, 664–65 (6th Cir.1985).

■ Indirectly, Plaintiff argues unfairness or an absence of good faith by GM. However, any legal obligation of GM under statute or contract to proceed in good faith is owed primarily to Mullen Oldsmobile and not Plaintiff. And, no one has or can argue that Mullen Oldsmobile has been treated unfairly or in a manner inconsistent with the relevant statute and cases. After all, it received the full benefit of its bargain under GM's exercise of right of first refusal.

Consequently, Plaintiff has no standing to assert rights which belong exclusively to Mullen under the Mullen/GM Agreement.

### IV.

■ Finally, Count III of the Complaint asserts that General Motors tortiously interfered with the Purchase Agreement between Plaintiff and Mullen Oldsmobile. Tortious interference with contract occurs when a wrongdoer intentionally meddles with an agreement without justification or invades contractual relations by engaging in significantly wrongful conduct. *National Collegiate Athletic Ass'n v. Hornung,* 754 S.W.2d 855, 859 (Ky.1988).

■ The Purchase Agreement specifically provided that it was contingent upon Defendant's approval. By refusing to consent to the Purchase Agreement, Defendant did not improperly disrupt Plaintiff's relationship with Mullen Oldsmobile, but instead simply did what the Purchase Agreement provided for and anticipated. By exercising its right of first refusal GM merely asserted a contractual right provided by Mullen Oldsmobile; a right which benefits the dealer by guaranteeing an alternative solvent market for the franchise assets. A claim of tortious interference should not be where GM is asserting legitimate contract rights.

■ The other issues Plaintiff raises are, therefore, not essential to resolving this case. Defendant's delay in exercising its right of first refusal under the Mullen/GM Agreement might have constituted a breach of its contract with Mullen Oldsmobile, but that fact alone permits no inference that Defen-

dant acted with malice toward Plaintiff. Neither does the mere fact that Defendant had previously granted a franchise to Plaintiff suggest that Defendant acted with ill will toward Plaintiff. Plaintiff points to not a single wrongful motive or reason to account for Defendants' exercise of its written contractual rights. Plaintiff's factual allegations, taken as true, do not support their claim that Defendants' acts were "malicious or without justification, or [were] accomplished by some unlawful means such as fraud, deceit, or coercion." *Steelvest, Inc. v. Scansteel Serv. Ctr.*, 807 S.W.2d 476, 487 (Ky.1991); *Hornung*, 754 S.W.2d at 859 (Ky.1988). Absent any such facts, the Court should not allow a jury to consider Count III of the Complaint.

## CONCLUSION

The issues raised by the complaint appear to have been anticipated and adequately addressed by GM and Mullen Oldsmobile in their various contractual dealings and that the case can be decided fairly by adherence to them. The Court will enter an appropriate order.

## ORDER

This case is before the Court on Defendant's motion for summary judgment. The Court having reviewed the file and having issued a memorandum opinion consistent with this order and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is SUSTAINED and the complaint is DISMISSED with prejudice. This is a final and appealable order and there is no just reason for delay.