**HUNT ENTERPRISES, INC. d/b/a R. Scott Conequip, Plaintiff,**

v.

**JOHN DEERE INDUSTRIAL EQUIPMENT COMPANY, Defendant.**

No. 3:96CV–822–S.

United States District Court, W.D. Kentucky.

May 23, 1997.

Opinion Denying Motion to Alter, Amend, or Vacate, Aug. 13, 1997.

to train, that caused her alleged injuries.

R. Van Young, Thomas Edward Powell, II, Greenebaum, Doll & McDonald, Louisville, KY, for Plaintiff.

C. Kent Hatfield, Charles Gibson Middleton, III, Augustus S. Herbert, Middleton & Reutlinger, Louisville, KY, Victor E. Grimm, John R. Myers, Erick F. Dyhrkoop, Bell, Boyd & Lloyd, Chicago, IL, Daniel Harvey, Deere & Company, John Deere Road, Moline, IL, for Defendant.

## MEMORANDUM OPINION

SIMPSON, Chief Judge.

This matter is before the court on the motion of the defendant, John Deere Industrial Equipment Company (hereinafter "Deere"), to dismiss the complaint of the plaintiff, Hunt Enterprises, Inc. (hereinafter "Hunt"), for failure to state a claim upon which relief can be granted. This action is before the court on diversity jurisdiction pursuant to 28 U.S.C. § 1332. The complaint alleges causes of action for breach of contract, misrepresentation, unfair trade practice and tortious interference with business opportunity.

## FACTS

In 1988, Hunt and Deere entered into a written dealership agreement. Pursuant to this agreement, Hunt, who had previously been a dealer of Case construction equipment only, began selling Deere industrial equipment. From 1992 to 1995, Hunt's performance declined. In December of 1995, Hunt met, to discuss the sale of its assets, with a representative of Pioneer Equipment Company (hereinafter "Pioneer"), a California-based Case products dealer. Deere exercised its contractual right to disapprove the attempted assignment of the dealership agreement.

By letter dated January 25, 1996, Deere informed Hunt that it was still expected to perform at a satisfactory level and imposed minimum performance requirements. On November 14, 1996, Deere gave Hunt written notice of termination of the agreement. The termination was to be effective March 14, 1997. Hunt then filed this action on December 18, 1996.

## DISMISSAL STANDARD

In its complaint, Hunt articulated four causes of action. Deere contends that Hunt has not established the material elements of any of these four causes of action. In determining a motion to dismiss, we must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir.1996) (quoting *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994)). The Sixth Circuit expounded on this standard in the case of *Andrews v. Ohio*, 104 F.3d 803 (6th Cir.1997).

> This Court must ... determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. A complaint need only give "fair notice of what plaintiff's claim is and the grounds upon which it rests." A judge may not grant a Fed. R.Civ.P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."

*Id.* at 805 (quoting *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993))(internal citations omitted).

Even under this liberal standard, we find that Hunt's complaint fails to establish a viable claim under any of the four asserted causes of action. Hunt can prove no set of facts which would entitle it to recover under any of its claims.

## BREACH OF CONTRACT

Hunt contends that Deere breached the agreement in a variety of manners. First, Deere violated the contract's implied covenant of good faith and fair dealing when it terminated the dealership agreement. Second, Deere again violated this implied covenant when it refused to approve the proposed sale of Hunt's dealership to Pioneer. Third, Deere's termination of the agreement was in violation of the parties' oral understanding as to the projected duration and scope of the relationship. In response to these allegations, Deere asserts that the covenant of good faith and fair dealing cannot be used to contradict express contractual provisions and that the parol evidence rule precludes the introduction of any evidence demonstrating a prior or contemporaneous oral understanding.

### A. Good Faith and Fair Dealing

The parties' agreement contains provisions for termination of the agreement. Section two lists five reasons which justify Deere's immediate termination of the agreement. The third section then discusses termination on a specified date. This section provides:

> Unless the Dealer's appointment is terminated under Section 2, it shall continue until it is terminated by one or both of the parties as provided in this Section 3. The Dealer's appointment may be terminated at any time: ...
>
> (b) by written notice of either the Company or the Dealer to the other party given at least one hundred twenty (120) days

**700**

prior to the effective date specified in such notice . . . .

The agreement also contains a provision respecting the assignability of the agreement. Section fourteen of the agreement states, "This Agreement cannot be assigned by the Dealer without the prior written consent of the Company."

■ Hunt cites various cases for the proposition that an implied covenant of good faith is read into every contract to prevent a party from exercising any of its contractual rights in bad faith. We find that the case law does not support this contention. "Although it is recognized that implied in each contract is a covenant of 'good faith and fair dealing,' such a covenant does not preclude a party from enforcing the terms of the contract. . . . It is not 'inequitable' or a breach of good faith and fair dealing in a commercial setting for one party to act according to the express terms of a contract for which it bargained." *Travelers Ins. Co. v. Corporex Properties, Inc.*, 798 F.Supp. 423, 425 (E.D.Ky.1992) (internal citations omitted). "[M]any courts have held that the implied covenant [of good faith and fair dealing] may not be applied to limit a clear contractual provision allowing termination of the contract without cause." *Taylor Equip., Inc. v. John Deere Co.*, 98 F.3d 1028, 1032 (8th Cir.1996) (citing *Cardinal Stone Co. v. Rival Mfg. Co.*, 669 F.2d 395, 396 (6th Cir.1982)).

■ Deere's termination of the agreement with Hunt was done in accordance with the express termination provisions provided in Section three of the agreement. Similarly, Deere withheld its approval for the proposed assignment of the agreement to Pioneer as it was empowered to do by the express provisions of section fourteen of the agreement.

■ Hunt argues that Deere contradicts itself when it argues that the agreement allows for termination without cause, but then provides a reason in its notice of termination letter. It is true that Deere detailed its reasons for terminating the agreement, but we do not believe this weakens its argument that termination without cause is proper. In reading sections two and three of the contract, it is clear that section two provides

for immediate termination, without notice, by Deere in the event of only five particular types of events. It is also clear in reading both section two and three that section three allows for termination by either party with 120 days notice with or without cause. The fact that Deere provided reasons for termination along with 120 days notice does not transform section three into a for cause only termination provision. More importantly even if section three required cause for termination, Deere provided ample reasons for its decision to terminate the agreement.

Hunt cites the case of *Leibel v. Raynor Mfg. Co.*, 571 S.W.2d 640 (Ky.App.1978) for the proposition that the implied covenant applies to express contract terms and that a termination clause may only be exercised once the other party has had sufficient time to realize the benefits of its investment. We read this case to hold that reasonable notification of termination is the only thing required for sufficient protection of either party. *Id.* at 643. The agreement provides for 120 day notice for termination. Deere delivered notice of termination on November 14, 1996 to be effective March 14, 1997. Hunt may even have had notice before the official letter since Deere informed it in its letter of January 1996 that it intended to terminate the agreement if Hunt did not meet Deere's performance standards.

### B. Oral Understandings and the Parol Evidence Rule

■ Hunt asserts that the parties had an oral understanding in addition to the terms of the written contract. According to Hunt, the substance of this agreement was that Hunt was to remain a Deere dealer at least until its capital investment could be recouped and that Hunt's area of responsibility would be expanded or acquired to achieve that goal. The agreement did not provide a specific termination date. As we have already discussed, the agreement did, however, contain two provisions which provided for immediate termination under certain circumstances and for termination with notice. The agreement also contained provisions concerning Hunt's area of responsibility. The agreement states:

The Dealer [Hunt] accepts as his Area of Responsibility the counties of Bullitt, Carroll, Hardin, Henry, Jefferson, Larue, Marion, Nelson, Oldham, Shelby, Spencer, Trimble, and Washington in the State of Kentucky; Clark and Scott in the State of Indiana....

The Dealer's Area of Responsibility may be enlarged at any time with the written consent of the Dealer. Upon not less than 120 days written notice to the Dealer, the Area of Responsibility may be reduced by the Company.

Deere contends that any evidence of the alleged oral understanding is precluded by the parol evidence rule. This rule prohibits the introduction of evidence of prior or contemporaneous oral agreements which would vary or contradict the terms of the parties' written agreement. *See England v. Spalding,* 460 S.W.2d 4 (Ky.1970) and *KFC Corp. v. Darsam Corp.,* 543 F.Supp. 222 (W.D.Ky. 1982). There are, however, three exceptions to this rule as Hunt points out. *KFC Corp.,* 543 F.Supp. at 224. Hunt contends that two of the exceptions apply in this case. First, Hunt contends that this prior oral understanding can and does exist alongside the writing without varying or contradicting the writing. Second, it argues that the written contract is silent as to the parties' future plans for Hunt's ultimate area of responsibility.

> Where the parties put their engagement in writing all prior negotiations and agreements are merged in the instrument, and each is bound by its terms unless his signature is obtained by fraud or the contract be reformed on the ground of fraud or mutual mistake, or the contract is illegal.

*Childers & Venters, Inc. v. Sowards,* 460 S.W.2d 343, 345 (Ky.1970) (quoting *Hopkinsville Motor Co. v. Massie,* 228 Ky. 569, 15 S.W.2d 423, 424 (1929)). Fraud in the inducement, illegality and mutual mistake have not been alleged by either party.

The agreement contains a provision, section seventeen, which is entitled "Entire Agreement." This section states:

> No promise or representation not contained herein was an inducement to either party or was relied on by either party in entering into this Agreement. The Dealer understands that ... no agent or employee of the Company has authority to vary or add to the provisions of this Agreement, or make any representation going beyond its provisions.

We find that introduction of evidence of the parties' oral understanding concerning the dealership agreement lasting at least until Hunt recouped his capital investment would run afoul of the parol evidence rule. The termination provisions clearly give Deere the power to terminate at any time and without notice if one of a limited number of events occurs. Either party also has the power to terminate the agreement at any time with 120 days notice for any reason. The alleged oral understanding cannot coexist with these written provisions. The oral agreement directly contradicts the written provisions dealing with termination by placing an extra limitation on Deere's ability to terminate the agreement.

We also find that evidence as to the parties' oral understanding concerning definite expansion of Hunt's area of responsibility is also precluded by the parol evidence rule. The written provisions provide that Deere alone has the ability to reduce Hunt's area, but only with 120 days written notice to Hunt. The agreement also provides that Deere has the ability at any time to increase Hunt's area, but only with the written consent of Hunt. Neither provision requires mandatory increases or decreases in Hunt's area of responsibility. In light of the integration clause contained in section seventeen, the alleged oral understanding cannot coexist with the written provisions nor does it address an issue on which the contract is silent. The oral agreement varies the written provisions concerning area of responsibility in that it changes the permissive language of the provisions into a mandatory obligation on the part of Deere to expand Hunt's area.

### MISREPRESENTATION

■ This next cause of action is based on alleged representations by Deere to Hunt that it would not terminate Hunt as a Deere dealer until a purchaser for Hunt's dealer-

ship could be found and approved. The parties agree on the elements of misrepresentation in Kentucky. These elements are: "(a) a material representation, (b) which is false, (c) known to be false or made recklessly, (d) made with inducement to be acted upon, (e) acted in reliance thereon, and (f) causing injury." *St. Martin v. KFC Corp.*, 935 F.Supp. 898, 909 (W.D.Ky.1996) (quoting *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky.App.1978)).

Deere argues that the case of *Tractor & Farm Supply v. Ford New Holland, Inc.*, 898 F.Supp. 1198 (W.D.Ky.1995) is directly on point. In this case, the plaintiff asserted that promises by the defendant that their franchise arrangement would continue as long as profitable induced her to spend time and money to cultivate customer interest in the products. *Id.* at 1205. The court held that "estoppel cannot be the basis for a claim if it represents the same performance contemplated under a written contract." *Id.* (citing *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1042 (6th Cir.1990)). Deere also argues that this claim must fail because Hunt is basing it on an alleged false representation as to future conduct, and Kentucky does not recognize a cause of action for promissory misrepresentation. With respect to this reliance, Deere contends that Hunt has not plead reasonable reliance on the alleged false representation. Deere's final argument with respect to this cause of action is that Hunt did not plead the elements of the claim with particularity as required by Fed. R.Civ.P. 9(b).

We do not view *Tractor* as being on all fours with the present facts. Unlike the plaintiff in *Tractor*, Hunt has alleged detrimental reliance beyond its contractual duties. Hunt has plead that in reliance on Deere's representations it forbeared its contractual right to terminate the agreement. We find no merit in Deere's lack of particularity argument either. There is, however, a fatal flaw in Hunt's misrepresentation claim. In order to make a claim for misrepresentation, the alleged representation must pertain to present or preexisting facts, not future events. *Schroerlucke v. Hall*, 249 S.W.2d 130, 131 (Ky.1952). The exception which

Hunt attempts to rely on is not applicable to these facts under Kentucky law. In Kentucky, a statement as to future conduct may only form the basis for a misrepresentation claim if it is made to induce the other party to enter into the contract. Deere's alleged false representations were made well after the contract had been formed.

### UNFAIR TRADE PRACTICES

■ Hunt also claims that all of the actions taken by Deere during their relationship constitute an unfair trade practice in violation of KRS §§ 367.170 and 446.070. We find this claim to have no merit. Kentucky's Consumer Protection Act, Chapter 367, provides a private right of action for unfair, false or misleading acts in the purchase or lease of goods or services obtained primarily for personal, family or household purposes. *See* KRS § 367.170 and § 367.220. The equipment which Hunt obtained from Deere does not qualify as goods for personal, family or household purposes.

"KRS 446.070 provides a cause of action to a person injured by a violation of a statute which is penal in nature or which does not prescribe the remedy for its enforcement or violation...." *Skilcraft Sheetmetal v. Kentucky Machinery*, 836 S.W.2d 907, 910 (Ky. App.1992). "Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky.1985). This section provides no remedy for Hunt since the Consumer Protection Act specifies both the prohibited acts and the available remedies. Since Hunt does not come within the class intended to be protected by §§ 367.170 and 367.220, this cause of action must also fail.

### TORTIOUS INTERFERENCE WITH CONTRACT

■ In his final cause of action, Hunt asserts that Deere's refusal to approve the sale of the dealership to Pioneer was a wrongful interference with its reasonable business opportunities. In order to prove a claim for tortious interference, Hunt must demonstrate that "a wrongdoer intentionally

meddle[d] with an agreement without justification or invade[d] contractual relations by engaging in significantly wrongful conduct." *Blair v. General Motors Corp.*, 838 F.Supp. 1196, 1200 (W.D.Ky.1993). In *Blair*, a dealer entered into an agreement for the sale of its dealership contingent on General Motors' approval. General Motors refused to approve the sale, and the prospective buyer brought suit for tortious interference, among other things. The court held, "A claim of tortious interference should not be where GM is asserting legitimate contract rights." *Id.*

This reasoning was followed in the case of *National Collegiate Athletic Assoc. v. Hornung*, 754 S.W.2d 855 (Ky.1988). In this case, the NCAA exercised its right of announcer approval to reject one of the television station's candidates for announcer. The candidate then sued the NCAA for tortious interference. The court held, "This right [of announcer approval] had been bargained for and was an essential element in the contract with WTBS. The NCAA was entitled to assert its right even to the detriment of Hornung's prospective contractual relation." *Id.* at 860. Similarly, Deere's right to withhold its consent for the sale of Hunt's dealership was bargained for and an essential part of the contract between the parties. Deere was entitled to withhold its consent even to the detriment of Hunt. As such, Hunt's claim must fail since it does not sufficiently plead improper interference by Deere.

### CONCLUSION

Taking all of Hunt's allegations as true, we find that Hunt can prove no set of facts in support of the four causes of action asserted in its complaint. Hunt has failed to state a claim upon which relief may be granted, and Deere is entitled to dismissal of the complaint.

### MEMORANDUM OPINION and ORDER

This matter is before the court on the motion of the plaintiff, Hunt Enterprises (hereinafter "Hunt"), to alter, amend or va-

cate the court's order of May 23, 1997. In that order we granted the motion of the defendant, John Deere Industrial Equipment Company (hereinafter "John Deere"), to dismiss Hunt's complaint as to all claims and dismissed the complaint with prejudice. Hunt contends that our previous order should be vacated or amended because: (1) there has been an intervening development in the controlling law; and (2) our previous order adopted an unnecessarily narrow interpretation of Kentucky law.[1]

Hunt cites the case of *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 690 A.2d 575 (1997) to support its argument that there has been an intervening development in the controlling law. We decline to amend or vacate our order of May 23, 1997 based on the reasoning of *Sons of Thunder*. First, an opinion from the Supreme Court of New Jersey is not controlling in this jurisdiction. Second, the issues which confronted the Supreme Court of New Jersey and how those issues were presented were sufficiently different to make *Sons of Thunder* distinguishable from the facts of this case.

In discussing the significance of *Sons of Thunder*, Hunt argues that we "ignored Deere's bad faith and dishonest performance prior to the actual termination and the manner in which Deere exercised its rights." (Pl.'s Mem. Supp. Alter, Am. or Vacate at 7–8.) We have reviewed Hunt's memorandum opposing John Deere's motion to dismiss, and Hunt did not present any argument as to bad faith in the performance of the contract. The only possible reference Hunt made to this argument in its memorandum was when it stated, "When Deere terminated the agreement without giving R. Scott the opportunity to realize the benefits of his contract, Deere breached the duty of good faith and fair dealing." (Pl.'s Mem. Opp. Dismiss at 17.) We dismissed this argument as prohibited by the parol evidence rule because it dealt with Hunt's assertion that prior oral understandings precluded termination of the contract

---

1. While Hunt's motion seeks reinstatement of all of its claims, it only presents an argument as to its bad faith breach of contract claim. As such, we shall view the omission of an argument ad-

dressing the other claims as a waiver and only address Hunt's bad faith breach of contract claim.

until Hunt had expanded its area of responsibility.

With respect to Hunt's argument that we adopted an unnecessarily narrow view of Kentucky law, we believe that our interpretation of Kentucky law is correct. Based on the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the plaintiff, Hunt, to alter, amend or vacate our order of May 23, 1997 is **DENIED**.